OGLE *v.* ADAMS.

(Absent, MOORE, JUDGE).

Decided December 12, 1877.

1877.
Special Term.

1. If a court of equity in ordering an issue of fact to be tried by jury, irregularly give the defendant the affirmative of the issue, and the issue is found by the jury in favor of the plaintiff, the Appellate Court will not, on appeal by the defendant, reverse the decree directing the issue and subsequent decrees rendered in the cause, based upon the verdict of the jury, for such irregularity in the decree directing the issue, when it plainly sees that the appellant could not have been prejudiced thereby.

2. When in a cause in equity, the plaintiff by evidence in the cause has made out a *prima facie* case of the death of her husband from his absence and from not being heard from for twelve or fifteen years prior to the bringing of her suit, and the defendant, by the deposition of a witness or witnesses, filed in the cause, undertakes to prove that such witness or witnesses heard from the plaintiff's absent husband by letter or letters, written by him from another and adjoining State, and from the depositions of the witness or witnesses themselves, and other circumstances, the Appellate Court sees that there is such doubt of the truth of the testimony of such witness or witnesses, or as to the genuineness or falsity of such letters as that the conscience and judgment of the chancellor might well be in doubt as to the truth or falsity of the testimony of such witness or witnesses, or as to the genuineness or falsity of such letters, the Appellate Court will not in such a case reverse an order of the court directing an issue to be tried at the bar of the court, to ascertain and determine whether the plaintiff's husband (J. O.) was alive at any time within seven years next before the bringing of the suit.

3. When there is a bill filed for partition of lands, and for rents and profits thereof by one tenant in common against another, and the statute of limitations of five years is not pleaded as to rents and profits before the court, before or at the time of the order of reference to a commissioner of the court to ascertain the rents and profits, with which the defendant should be charged, and it does not appear that the defendant relied upon the statute of limitations as to such rents and profits before the commissioner and that the commissioner failed to recognize the statute or disregarded it, the Appellate Court will consider the statute of limitations out of the case.

4. If the defendant relies upon said statute of limitations as to rents and profits before the commissioner, and the commissioner includes in his report, items of rents and profits. which accrued more than five years before the commencement of the suit, and with which the defendant should not be charged under the statute of limitations, the defendant may, and should, except to the commissioner's report for that cause, and in this mode bring the report of the commissioner, so far as the same is obnoxious to the said statute, before the court below for adjudication by it. This is the course which should be pursued generally, when it does not appear by the record, that said statute of limitations of five years has been pleaded before the court before the order of reference.

5. The fact, that the court below directed the commissioner to as certain and report rents and profits, received by the defendant for a period of time greater than five years prior to the commencement of the suit, did not in this case preclude the defendant from relying upon the statute of limitations before the commissioner.

6. Where the plaintiff files a bill in equity for partition and rents and profits of land, and the defendant does not claim in his answer that he has made improvements on the land, partition of which is sought by the plaintiff, for which he should be allowed in whole or part against the plaintiff, &c., the court by its decree decides the right to partition in favor of plaintiff, and in and by said decree directs one of its commissioners to ascertain the annual rents and profits of the land, with which the defendant should be charged without any direction to the commissioner to ascertain the value of improvements made on the land. HELD:

That under the state of the case this was not error in the court below, for which the decree of reference will be reversed. And HELD:

Further, that such decree of reference does not preclude the defendant from proving before the commissioner such

improvements, and the value thereof, as to which the defendant may be entitled against the plaintiff. And HELD:

Further, if the defendant fails to except to the report of the commissioner for failing to allow him for such improvements, and thus bring the action or omission of the commissioner to the attention of the court below for adjudication by it, the defendant will not be heard in the Appellate Court to make exceptions and objections to the report of the commissioner for not ascertaining in his report such improvements and the value thereof and the amount thereof, which should be charged to the plaintiff.

7. A commissioner's report, if erroneous upon its face, may be objected to at the hearing of the cause, though no exception be previously filed, and also in the Appellate Court, though no exception appears to have been taken in the court below; but without such exception generally, it cannot be impeached or objected to by adult parties in the Appellate Court in relation to subjects, which may be affected by evidence *aliende* the report itself.

Appeal from, and *supersedeas* to, several decrees of the circuit court of the county of Marshall, pronounced in a cause in chancery, in said circuit court, in which Maria Ogle was plaintiff and Washington Adams was defendant, granted upon the petition of said Adams.

Hon. C. S. Lewis, late judge of the second judicial circuit, rendered the decree of January 7, 1874. The other decrees were pronounced by Hon. T. Melvin, judge of the first judicial circuit.

The case is fully stated in the opinion of the Court.

*Hanson Criswell* and *George O. Davenport*, for appellant.

*J. Dallas Ewing* and *J. L. Parkinson*, for appellee.

HAYMOND, JUDGE, delivered the opinion of the Court:

At the November rules 1869, of the circuit court of Marshall county, Maria Ogle filed a bill in the circuit court

of said county, against Washington Adams, in which she alleges substantially that she is a resident of said county; that she is a daughter of Philip Coe, deceased; that she intermarried with one Joseph Ogle, on the —— day of —— 18—; that her husband wilfully abandoned her on the —— day of —— 18—, and left for parts unknown to her, and has not been heard of, so far as she can learn, for more than seven years last past, and she charges that he is dead. She further alleges that Philip Coe, deceased, by his last will and testament, after making provision for his widow, Elizabeth, and devising a certain farm, described in the will, to his son Benjamin Coe, then devised the residue of his farm to be divided among the rest of his children, to-wit: Delila Cecil, Abigail Martin, Elizabeth Moore, Maria Ogle (plaintiff), and Thomas Coe, according to quantity and quality, to be laid off to them according to the provisions and directions contained in the said will; that all the said children and devisees of said Philip Coe, deceased, (except plaintiff), have sold their several interests, as devised to them in said will, and that the defendant, by *mesne* conveyances, is now the owner thereof and in possession of the same; that said farm contained about three hundred and forty acres, described as shown by plat; that said Elizabeth Coe, widow of said Philip Coe, deceased, has departed this life; that plaintiff ever since the death of the said Philip Coe has been and now is seized in fee of and in the said farm lands, messuages and premises, one equal undivided fifth part or share as joint tenant and that the defendant is seized in fee of and to the other four-fifths of said land; that she has frequently applied to and requested the defendant to join and concur with her in making a fair, just and equal partition of said premises between them, in order that their respective shares and proportions may be allotted, held and enjoyed in severalty; that the defendant absolutely refuses to comply with her said request. Plaintiff also charges that for some years last past, the defendant had

held, enjoyed and occupied the tenement and said land, and every part thereof; that he has raised on said lands large quantities of fruit and grain, and pastured stock, cattle, hogs, sheep, and the like, and realized large sums of money therefrom, to-wit : the sum of $10,000.00, and that he ought to account to and pay her at least $2,000.00, rents and profits realized from said land; that he has never accounted to her (though often requested so to do), but wholly refuses so to do; that if an account were taken between plaintiff and defendant, a large sum would be found due to plaintiff. She prays that an account be taken, by and under the direction of the court, between her and the defendant in relation to said rents and profits; and that the balance found due on taking said account may be paid by the defendant to plaintiff; and that a commission of partition may be issued out of and by decree of the court, and directed to certain commissioners therein named, to decide and allot the said lands, messuages and premises, in equal fifths or shares ; that one full equal fifth part or share may be allotted and conveyed to plaintiff, and that four equal fifth parts may be allotted and conveyed to the defendant; that said Adams be made defendant to the bill, and that he be required to answer the same and every allegation thereof under oath ; and she also prays for such other and further general and special relief in the premises, as the nature and circumstances of the case may require. An official copy of the will of Philip Coe, deceased, is filed with the bill. It appears by the will that the testator devised to his wife Elizabeth his interest in the grain then growing on his farm, and the use of the farm for one year from the time of his death, excepting the part which he bequeathed to his son Benjamin ; after the year expires, he allows her one-third of the farm during her natural life, which third is not to interfere in any way with Benjamin's part of the land. . The second and third items of said will are as follows, viz :

" Item. I will and bequeath to my son Benjamin that

part of my farm on which he now resides, beginning at my maple corner, and running thence eastwardly with my line so far as that line running north will include about one-half of an acre of the bottom above my lower hay house, said line continuing north to the road; thence along the road to said Benjamin's bars by the run, known as the 'little sugar camp run,' and the first run below Musgrave's run; thence north to said run; thence up the same by the same meanders to the Cox field fence; thence with said fence eastwardly to the corner of said fence; thence north 6 poles; thence west to my western boundary line; thence with the same to the beginning—the same to be his full share of my estate, both real and personal.

"Item. The remainder of my farm is to be equally divided amongst the rest of my children, namely: Delila Cecil, Abagail Martin, Elizabeth Moore, Maria Ogle and Thomas Coe, according to quantity and quality. And it is also my will that Delila Cecil's part be given to her adjoining the land owned by her late husband, Wm. Cecil; also that Abigail Martin's part, where she now resides, and that in laying off her part, the improvements which her husband has made, is not to be taken into consideration; and if the said Delila Cecil, Abigail Martin, Elizabeth Moore, Maria Ogle and Thomas Coe, cannot agree upon a division of the land, then I will that my executors sell the same in the best possible manner, and the money be equally divided amongst them, allowing W. L. Martin a reasonable compensation for the building of his house."

The said will of said Philip Coe, deceased, was duly proved and admitted to probate by the circuit superior court of Marshall county, at the spring term thereof, 1849. At a circuit court held in and for the county of Marshall, on the 11th day of January 1870, the defendant appeared and filed his answer to the plaintiff's bill, which answer is as follows, viz:

" *The Answer of Washington Adams, the defendant, to the Bill of Complaint of Maria Ogle, complainant.*

" This defendant now, and at all times hereafter, reserving unto himself all benefits and advantage of exception, which can or may be had or taken to the many errors, uncertainties and other imperfections in said complainant's said bill of complaint contained, for answer thereto, or unto so much and such parts thereof as this defendant is advised is or are material or necessary for him to make answer unto, answering says it is true, as this defendant is informed and believes, as alleged in said bill, that said complainant is a daughter of Philip Coe, deceased, and that she intermarried with one Joseph Ogle, on the —— day of —— A. D. 18—.

"This defendant says further, he cannot admit or deny whether the said Joseph Ogle wilfully abandoned the said complainant; neither can he admit or deny for how long he has been absent from said complainant, but insists that complainant shall make strict proof of these allegations. This defendant however denies, that the said Joseph Ogle is dead, but charges, according to the best of his knowledge and belief, that he is still living, and has been heard from within seven years from the time of the institution of this suit.

" This defendant further admits that Philip· Coe, deceased, by his last will and testament in writing, after making provision for his widow, Elizabeth, and devising a certain boundary of his farm described in his said will to his son, Benjamin Coe, then devised the residue of his farm to be divided amongst the rest of his children, to-wit: Delila Cecil, Abigail Martin, Elizabeth Moore, Maria Ogle and Thomas Coe, according to quantity and quality, to be laid off to them according to the provisions and directions contained in the said last will and testament of the said Philip Coe.

" This defendant further admits that all the said children and devisees of said Philip Coe, deceased, *including* the complainant, have sold their several interests as

devised to them in said will, and this defendant is now the sole owner thereof and in possession of the same. And he denies that the said complainant is entitled to any part of the said farm, but avers that on the 8th day of December, 1853, the said complainant, together with her said husband and other parties interested, made and executed a deed to one Benjamin Coe, with covenant of general warranty, to the amount of $1,050.00; that subsequently, to-wit: on the —— day of —— A. D., 18—; the said Benjamin Coe conveyed all his interest in the land, mentioned in the bill and proceedings in this cause, to said defendant by deed of the last mentioned date, from which time to the present the said defendant has had entire control and full possession of the said property. This defendant denies that the complainant, ever since the death of the said Phillip Coe, has been and now is seized in fee of and in the said farm, land, messuages and tenements, one equal undivided fifth part or share as joint tenant, but avers that he is seized in fee of the whole of said lands. This defendant denies that he has realized large sums of money from large quantities of fruit and grain raised on said premises, and pastured stock, cattle, hogs, sheep, horses and the like, from which he has realized large sums of money, to-wit: $10,000.00, and that he ought to account with the complainant and pay her at least $2,000.00, rents and profits realized from the purchase of said land, but avers the fact to be, that for the last seven years he has not realized from the same more than $2,000.00 altogether. And having fully answered, he prays to be dismissed with his reasonable costs by him about this behalf expended."

The defendant filed with his answer a deed from Joseph Ogle and others, which is as follows:

"This deed, made the 8th day of December, in the year 1853, between Thomas Coe and Margaret his wife, George Moore and Elizabeth his wife, and Joseph Ogle, and Maria his wife, of the first part, and Benjamin Coe

1877.
Special Term.

Ogle
v.
Adams.

of the second part, witnesseth : That in consideration of the sum of $1,050.00 in hand paid, the said parties of the first part do grant unto the said party of the second part all the following described piece or parcel of land, situate in the county of Marshall, Virginia, on the waters of Big Grass creek, and which is bounded as follows, to-wit : Beginning at a stone in Wm. L. Martin's line; thence north 88 west 52 poles to a white oak and gum; thence south 89 west 44 poles to a beech; thence south 78 west 124 poles to a stone; thence south 18 poles to a chestnut oak; thence east 22 poles to a stake; thence south 18 east 6 poles to a dogwood; thence north 81 east 32 poles to a stake near a white oak in Little Sugar Camp run; thence down the said run 120 poles to a wild cherry; thence north 27 east 36 poles to a hickory; thence north 75 east 69 poles to a dogwood and iron-wood; thence north 154 poles to the beginning, with all the appurtenances thereunto belonging, containing 135 acres and 92 poles.    And the said George Moore and Elizabeth his wife covenant, that they will warrant generally the land hereby conveyed, to the amount of $600.00 ; and the said Thomas Coe and Margaret his wife and Joseph Ogle and Maria his wife covenant, that they will warrant generally the land hereby conveyed unto the said Benjamin Coe, to the amount of $1,050.00.    Witness the following signatures and seals :

"JOSEPH OGLE.                    [Seal.]

"MARIA <sub>her</sub> ⋈ OGLE.    [Seal.]
          mark.

"GEORGE <sub>his</sub> ⋈ MOORE.    [Seal.]
          mark.

"ELIZABETH <sub>her</sub> ⋈ MOORE. [Seal.]
          mark.

"THAOMS COE.                    [Seal.]

"MARGARET COE.                [Seal.]

Attest :
    "WILLIAM HOLDEN.
    "SAMUEL VARNER."

"STATE OF OHIO, MONROE COUNTY:

"We, William Holden, ———, justices of the peace for the county aforesaid, in the State of Ohio, do certify that Joseph Ogle, whose name is signed to the within deed, bearing date on the 8th day of December 1853, has acknowledged the same before us in our county aforesaid. And we further certify that Maria Ogle, the wife of the said Joseph Ogle, and whose name is signed to the deed aforesaid, personally appeared before us, in our county aforesaid, and being examined by us privily and apart from her husband, and having the deed aforesaid fully explained to her, the said Maria Ogle, acknowledged the said deed to be her act, and declared that she had willingly executed the same, and does not wish to retract it.

"Given under our hands, this ——— day of December 1853.

　　　　　　　　　　　　"WILLIAM HOLDEN, J. P.
　　　　　　　　　　　　"—————————, J. P."

"STATE OF OHIO, MONROE COUNTY:

"I, James Mitchell, clerk of the court of common pleas of said county, certify that William Holden was during the year 1853 and still is an acting justice of the peace within and for said county, duly commissioned and sworn, and authorized by the laws of Ohio to take acknowledgments of deeds, &c.

"In testimony whereof, I have hereto set my hand officially, and affixed the seal of our said court, at Woodsfield, this 2d day of January, A. D. 1854.

　　　　　　　　　　　　"JAMES MITCHELL, Clerk.
"[Seal].

"MARSHALL COUNTY, TO-WIT:

"I, Adam Erlewine, a justice of the peace for the county aforesaid, in the State of Virginia, do certify that George Moore, Elizabeth Moore, Thomas Coe,

Margaret Coe, whose names are signed to the within deed, bearing date on the 8th day of December in the year 1853, have acknowledged the same before me, in my county aforesaid.

"Given under my hand, this 9th day of February 1854.

"ADAM ERLEWINE, *J. P.*"

"MARSHALL COUNTY, TO-WIT:

"We, John Burley and Adam Erlewine, justices of the peace for the county aforesaid, in the State of Virginia, do certify that Elizabeth Moore, the wife of George Moore, and Margaret Coe, the wife of Thomas Coe, whose names are signed to the within deed, bearing date on the 8th day of December 1853, personally appeared before us in the county aforesaid, and being examined by us privily and apart from their husbands, and having the deed aforesaid fully explained to them, they, the said Elizabeth Moore and Margaret Coe, acknowledged the said writing to be their act, and declared that they had willingly executed the same, and do not wish to retract it.

"Given under our hands this 9th day of February 1854.

JOHN BURLEY. [Seal].
ADAM ERLEWINE. [Seal]."

"VIRGINIA:

CLERK'S OFFICE, MARSHALL COUNTY COURT, }
October 5th, 1855. }

"This deed from Thomas Coe, George Moore *et al.*, to Benjamin Coe was this day received in my office for record, and being certified by a justice for Monroe county, Ohio, and two justices for said county of Marshall, the said deed and certificates are admitted to record.

"Teste:

"E. H. CALDWELL, *Clerk.*"

1877.
Special Term.

Ogle
v.
Adams.

The parties each took depositions in the cause, and afterwards, at a circuit court held on May 15, 1872, this cause came on to be heard, and it was "adjudged, ordered and decreed, that an issue be directed to be tried at the bar of this court, to ascertain and determine whether Joseph Ogle, the husband of the complainant, was alive at any time within seven years next before the bringing of this suit; and on the trial of such issue, the defendant, Adams, shall have the affirmative, and the complainant, Maria Ogle, shall have the negative, and there may be read on the trial the depositions already in the case of witnesses who are dead, or who do not reside within the jurisdiction of this court, so far as said depositions may bear upon or effect the issue herein directed," &c.

Afterwards, on the 28th day of October 1873, the parties appeared in court, by their attorneys, "and by consent, a jury of seven being called, came, and being elected, tried and sworn, to ascertain and determine whether Joseph Ogle, the husband of the complainant was alive at any time within seven years next before the bringing of this suit, upon their oath say:

"We, the jury, find that Joseph Ogle, was not living seven years prior to this suit."

Afterwards, at a special term of said circuit court, held on the 7th day of January 1874, "this cause came on this day to be further heard upon the bill and answer, and replication thereto, the depositions of witnesses, and the verdict of the jury upon the issue out of chancery in this cause, and was argued by counsel. On consideration whereof, the said verdict is approved and confirmed. The court doth adjudge, order and decree, that the deed purporting to be made by Joseph Ogle and the plaintiff, Maria Ogle, dated on the 8th day of December, in the year 1853, pretending to convey to Benjamin Coe the share or interest of Maria Ogle in the real estate of her father, Philip Coe, deceased, described in exhibit B filed in this cause, be and the same is hereby declared void as to the

said Maria Ogle. And it is further adjudged, ordered and decreed, that William Cecil, John Lorain, William Alexander and Samuel Riggs, any three of whom may act, who are hereby appointed commissioners for the purpose, being first duly sworn, do proceed to lay off and divide the real estate, of which Philip Coe died seized, and now in the possession of the defendant, Washington Adams, and described in exhibit B; and that said partition be made as directed by the will of Philip Coe, deceased, a copy of which is filed in the cause; that said commissioners assign to Washington Adams by metes and bounds the shares to which Benjamin Coe, Thomas Coe, Abigail Martin, Elizabeth Moore, and Delila Cecil would have been entitled, he being the owner by purchase of said shares; and that they lay off and assign to Maria Ogle by metes and bounds her proper share under said will, having regard to quantity and quality, the said share being the one-fifth, after laying off the share by metes and bounds willed to Benjamin Coe, and report their proceedings to this Court. It is further adjudged, ordered and decreed that this cause be referred to James D. Morris, a commissioner of this court, to ascertain and report to the next term the annual rental value of the lands described in exhibit B for each and every year since the 1st day of January 1864, up to the 1st day of January 1874, and what rents and profits the said defendant, Adams, has derived annually for said period of time from the lands so to be set off and allotted to the complainant, Maria Ogle, and make report to the next term of this Court."

And on another day, to-wit: "At a circuit court held at the court house for Marshall county, on the 5th day of October 1874, this cause came on this day to be further heard on the bill and answer, exhibits and other papers formerly read in this cause, the former orders and decrees therein, and the report of Wm. H. Cecil, Samuel Riggs, William Alexander and J. Lorain, commissioners, filed on the 7th day of July 1874, and no exceptions having

been taken to said report, the same is here confirmed. And it is adjudged, ordered and decreed that the com·plainant, Maria Ogle, hereafter hold in severalty the forty-eight acres and one hundred and twenty-eight poles bounded and described as shown in said report, to-wit: Beginning at a beech ; thence south 25° east 50 poles to a white oak ; thence south 13° east 32 poles to a hickory ; thence south 52° west 8 poles to a sugar tree ; thence south $2\frac{3}{4}$° east 53 poles to a stone ; thence south 69° west 13 7-10 poles to a wild cherry ; thence north 47° west 80 poles to a beech ; thence north 10° west 20 poles to a stone ; thence north 54° west 10 poles to a stake ; thence south 88° west 36 poles to a stake ; thence north 60 poles to a stake ; thence west 9 poles to a stake ; thence north 54° west 24 poles to a stone ; thence north 78° east 124 poles to the beginning, being designated by the plat and report of said commissioners by the letters A, B, Z, K, J.; and that the said Washington Adams hereafter hold in severalty the residue of the said lands mentioned and described in said report. It is further adjudged, ordered and decreed, that unless the said Washington Adams surrender the possession of the lands herein described, to be held in severalty by said Maria Ogle to her within sixty days from the date of this decree, then she may have and sue out of the clerk's office of this court a writ of possession therefor as at law, and this cause is continued as to costs, and the matters referred to James D. Morris, commissioner."

After the foregoing decrees were rendered, and on the 16th day of February 1875, the defendant filed several depositions of witnesses as to the annual value of the rents and profits of the land, allotted and assigned by the court to the plaintiff, and also tending to prove that defendant had made improvements on said land after the 1st day of January 1864. On the 9th day of February the plaintiff filed a deposition of a witness as to the annual value of the land, so assigned to her from the 1st of January 1864. All these depositions were taken by

and before the commissioner; and after he was directed to take an account of the rents and profits of the land, Commissioner James D. Morris made his report as to the rents, &c., to the court, which is as follows, viz:

" *To the Circuit Court of Marshall County:*

" Pursuant to a decree of the circuit court of Marshall county, rendered on the 9th day of January 1874, in a suit in chancery depending in the said court between Maria Ogle, plaintiff, against Washington Adams, defendant, the undersigned, a commissioner of said court to whom was referred to ascertain and report the annual rental value of the land directed in Exhibit "B," filed in said cause, for each and every year since the first day of January 1864, up to the first day of January 1874, and what rents and profits the defendant, Adams, has derived annually for said period of time from the said land, reports to the Court, that on the 26th day of January 1875 he issued notice against the defendant, Washington Adams, in this cause, requiring him to attend the stating of said matters before him at the clerk's office of said court on the 9th day of February 1874, which was returned to your commissioner by the sheriff, duly executed on the 29th day of January 1875; that the parties to the suit appeared, and the deposition of Wm. Alexander was taken on the part of the plaintiff; and by consent the further taking of depositions was adjourned to the 16th day of February 1875, at said clerk's office, at which time and place the parties again met, and the depositions of Wm. Gosney and Elijah Adams were taken for the defendant, by consent, and the papers submitted to your commissioner for his statement and report. Your commissioner finds much conflict or difference in the evidence in reference to the quality of the cleared land, as well as the annual rental value per acre, but after mature consideration finds annual rent of $75.00 from the defendant to the plaintiff from the 1st day of January 1864, to the 1st day of January 1875, making

$825.00 for her said premises. Your commissioner could not ascertain what rents and profits the defendant, Adams, has derived annually for said periods of time for said lands, but that the annual rental value of the lands recovered in this suit is $75.00, as above stated. All of which is respectfully submitted.

" Given under my hand, as commissioner aforesaid, this 18th day of February 1875."

"J. D. MORRIS, *Com., &c.*"

To this report only one exception was filed and that by the defendant. The exception is as follows, viz: "The within report of commissioner Morris excepted to for this, that the rental value of the land is reported too high and is not warranted by the evidence."

On the 1st day of April 1875, the cause came on to be further heard by the court "upon the papers formerly read, and the report with the exceptions thereto of James D. Morris, to whom this cause was referred, to ascertain and report the amount due the plaintiff, Maria Ogle, from the defendant Adams, for rents and profits, and was argued by counsel ; and the said commissioner having ascertained from the evidence adduced, that the amount due the plaintiff from the defendant for rents to be $825.00 up to the 1st day of January 1875, it is therefore adjudged, ordered and decreed, that the exceptions offered to the commissioner's report be overruled and said report confirmed, and that the defendant Adams, pay to the plaintiff, Maria Ogle, the sum of $825.00, for rents due the said plaintiff up to the 1st day of January 1875, with interest from this date, and that unless the said defendant pay the said sum of $825.00, with interest within thirty days, that execution may issue therefor the same as at law."

From and to the said decrees rendered in this cause, the defendant has obtained an appeal and *supersedeas*, and thus this cause is before this Court for review and determination. The defendant in his petition for an appeal

and *supersedeas* has assigned the following errors in the decrees of the circuit court, viz :

"1. Benjamin Coe should have been made a defendant to the suit.

"2. The court should have directed the master to ascertain and report the value of the permanent and valuable improvements made on the land by the defendant. Such improvements should have been allowed by the court, and the same made a set-off against the rents.

"3. The court erred in not treating the deed from the plaintiff to Benjamin Coe as a contract, and decreeing a specific performance of the same.

"4. The court erred in decreeing possession of the land to the plaintiff without providing for the return of the purchase money paid to her for the same.

"5. The court erred in overruling defendant's exceptions to the report of the master commissioner Morris, and in decreeing to plaintiff $825.00 for rents.

"6. The court erred in ordering an account for rents beyond five years next preceding the commencement of the suit, and in its allowance of and decree for the same.

"7. The court erred in ordering the master to find, and in decreeing to the plaintiff, the 'annual rental value' of the lands, instead of the 'clear annual value' of the premises during the time he was in possession thereof, (not exceeding five years before the suit) and exclusive of the use by defendant of the improvements thereon made by himself and Benjamin Coe, under whom he claimed, which would have allowed to defendant the taxes paid and repairs for keeping the premises up.

"8. The court erred in directing an issue, and trying the same before a jury at the bar of that court ; and also in directing that the defendant should have the affirmative of the issue directed instead of the negative.

"9. The court erred in confirming the master's report and decreeing to plaintiff the $825.00 as rents without requiring him to report the annual value of the whole land described in exhibit B, and what rents and profits

the defendant had derived annually from the land set off to the plaintiff as ordered in the decree of January 7, 1874.

"10. The court erred in confirming the master's report as to rents, which was not responsive to any previous order or authority of the court; but on the contrary, the amount of rent reported was made upon a different basis than as directed by the previous order."

As the first decree rendered in the cause was the decree directing an issue to be tried at the bar of the court, I will first consider the eighth error assigned by the defendant, which relates to that decree. The 4th section of chapter 131 of the Code of 1868, provides, that "a circuit court wherein a chancery cause is pending, may direct an issue to be tried in such court." If there were sufficient reasons appearing in the cause at the time the decree was rendered, to authorize the court to order an issue to be tried by jury, it was not error in the circuit court to direct the issue to be tried "at the bar of this court." This was substantially the language used in the case of *Smith's adm'r* v. *Beatty, et al.*, 11 Gratt. 752, 757. The objection is more technical than substantial, and the order should be construed as directing the issue to be tried in the circuit court as authorized by the statute, and whether at the bar of this court or on the law side of the court, is undecided. Did the court err in directing the issue? The 44th and 45th sections of chapter 130 of the Code of 1868, provides:

"44. If any person, who shall have resided in this State, go from and do not return to the State for seven years successively, he shall be presumed to be dead, in any case wherein his death shall come in question, unless proof shall be made, that he was alive within that time."

"45. If the person so presumed to be dead be proved to have been living, any person injured by such presumption shall be restored to the rights, of which he shall be deprived by reason of such presumption."

Greenleaf, in his work on Evidence, says, at section

278 page —: " But however this may be, as a mere presumption of law, the rule is now settled for most judicial purposes, that the *presumption of life* with respect to persons, of whom no account can be given, *ends at the expiration of seven years* from the time they were last known to be living; after which the burden of proof is devolved on the party asserting the life of the individual in question." The rule stated by Greenleaf, is the common law rule as I understand it. The depositions filed in the cause concur in proving that the plaintiff's husband, Joseph Ogle, left his family and home in Marshall county from twelve to fifteen years prior to the institution of this suit, and that he had not been heard from, from about the time he so left his family, before the institution of this suit. Where he went to does not distinctly appear. One of defendant's witnesses does say, " he went to Baltimore with a drove and never returned." All the evidence, I think, clearly shows, that at or about the time Joseph Ogle so left his family, he entirely abandoned them. Under this state of the proof a *prima facie* case was made out, I think, clearly, from which under the law the court was authorized to presume, that Joseph Ogle was dead at the expiration of seven years from the time, he so left and abandoned his family.

But on the 17th day of December 1870, the defendant Syllabus 2. took the deposition of one, John Coe, in the city of Wheeling, before a notary public, who states in his deposition, that he recieved a letter from him (Joseph Ogle) on the 28th day of December 1870, which was nearly two months after the institution of this suit. He also says he burnt the letter and can not produce it. When asked what were the contents of the letter, his only answer was, "well he wrote to me that he was in Cleveland. I received the letter on the 28th day of December, and he wrote to me to answer it immediately, that he would leave on the 3d of January, and I answered him that afternoon or the next day." He says the " Ogle part"

of the signature looked exactly like he used to write years ago, but the Joseph did not look hardly as good to me." He also says that he had several letters from Joseph Ogle, and he thinks the said letter was in the handwriting of said Joseph Ogle. He also says, on cross-examination, that he burned the letter, because Joseph Ogle requested him so to do. There are some matters developed on cross-examination of this witness, not necessary to specify here, which tend to cast a cloud over his testimony.

On the 26th day of December 1870 the defendant took the deposition of Thomas R. Coe, in Schuyler county in the State of Missouri, in which he states that it has been some seventeen years since I saw Joseph Ogle. He also states that "Joseph Ogle was living about one year ago the proof of which is, I had a letter from him about twelve months ago; he was then in Cleveland, Ohio." This last named letter is not produced; and the failure to produce it is not accounted for. The witness does not state whether it was in his possession at the time he testified or not, or whether it was lost or destroyed. The witness does not even testify that he is acquainted with the handwriting of Joseph Ogle. The deposition of Lewis W. Coe was also taken by defendant at the same time and place, that the deposition of Thomas R. Coe was taken, in which he says "I saw a letter from his (Joseph Ogle's) hand, about one year ago, as near as I can recollect; the letter was dated at Cleveland, Ohio, the 28th December 1869, as near as I can recollect. This witness does not say when he saw the letter, or how he knew it was written by Joseph Ogle, or to whom it was written. He does not say whether he was acquainted with the handwriting of Joseph Ogle or not. The letter is not produced, or its absence in any way accounted for. It may have been the same letter of which Thomas R. Coe speaks. But be that as it may, there is no sufficient or legal proof, that said letter was written by Joseph Ogle. The deposition of Elizabeth Moore was also taken by

plaintiff at the same time and place of the deposition of Thomas R. Coe, and she states "I believe he (Joseph Ogle), is now living, in consequence of a letter from him to my brother last February or March." This is all she says on the subject. She does not say she ever saw the letter, or how she knows her brother received such letter, or that she was acquainted with the handwriting of said Joseph Ogle. It is probable from what I see in the record, that said Elizabeth Moore is a sister of said Thomas R. Coe, and she doubtless refers to the letter of which Thomas R. Coe speaks, but she and he differ as to the time the letter should have been received. It appears in this cause, that the plaintiff and Joseph Ogle were married about thirty years before the commencement of this suit, and that Joseph Ogle left and abandoned the plaintiff and his family, in this State, about twelve or fifteen years before this suit was brought. If the last named letter had been produced, plaintiff could then have had an opportunity to have shown by evidence that it was not genuine. The fact that one of the said letters was burnt under the circumstances related by John Coe, and the other not produced, nor the failure to produce it accounted for, is in and of itself suspicious, and throws a cloud over those letters as to their genuineness, especially when taken in connection with the fact that they were written a short time after the commencement of this suit, and the further fact that no evidence was produced showing that Joseph Ogle has ever been seen by any one since some twelve or fifteen years before the writing of said letters, or at any time after they were written or even heard from before said issue was ordered, which was on the 15th of May 1872, some eighteen months after the time said letters were received. Under the circumstances of this case, it seems to me that there was such doubt as to whether said Joseph Ogle was living, that the circuit court was authorized to order the issue in the cause. The next question to be considered is, as to the form of the issue directed by the court.

1877.
Special Term.

Ogle
v.
Adams.

1877.
Special Term.

Ogle
v
Adams.
Syllabus 1.

In the 4th American edition of Daniels' Chancery Practice, page 1096, it is said : " If the affirmative of the issue is on the plaintiff, he has the right to begin. Therefore, on an issue, to try whether A. B., was at a certain time of sound mind, the plaintiff was held entitled to begin, as he affirmed the soundness. In considering, however, which party ought to begin, it is not so much the form of the issue which is to be considered as the substance and effect of it ; and the judge will consider by whom was the substantial fact to be made out, and on whom it lies to make it out. And it seems that as a general rule, the party entitled to begin is he who would have a verdict against him if no evidence were given on either side." While as a general rule, the party entitled to begin is he who would have a verdict against him if no evidence were given on either side, it seems to me that this rule may not be universal in issues out of chancery, or at least a departure from it would not in all cases, if any, be error of which the party given the affirmative could be heard to complain in an Appellate Court, especially if the court can see that such party could not possibly have been prejudiced thereby. In this case I think regularly the plaintiff was entitled to begin and conclude, and from the character of it, and as it appeared at the time the issue was ordered, if either party could have been prejudiced by giving the defendant the affirmative of the issue, it was certainly the plaintiff and not the defendant. Though the order directing the issue may be irregular in this case, still such irregularity, as to giving the defendant the affirmative upon the trial of the issue, was not to his prejudice in this case, and he cannot be heard to complain thereof in this Court. It is well settled that if an irregularity is committed in a judicial proceeding, which is not and could not have been prejudicial to the party complaining in an Appellate Court, that the judgment or decree of the court below will not be reversed for that cause at the instance of such party.

*As to the first assignment of error,* I see no sufficient reason why Benjamin Coe should have been made a party to this suit. The answer of the defendant alleges, that Benjamin Coe conveyed all his *interest* in the land, mentioned in the bill and proceedings in this cause, to the defendant by deed after the 8th December 1853, the deed from Benjamin Coe to defendant is not filed in the cause. The appellant's counsel have assigned no reasons in their brief, or in argument, why Benjamin Coe should have been made a defendant in this cause; and from any thing appearing in the record I see no sufficient reason therefor.

*The defendant's second assignment of error.* The defendant does not claim in his answer, that he had made any improvements on said land or any part of it; nor was there any evidence in the record showing or tending to show, that the defendant had made any improvements on said land, or any part of it, at the time the order of reference was made to a commissioner, to ascertain and report the rents and profits &c., as required by said decree; and defendant failed to ask the court to direct said commissioner to enquire and report as to improvements. Under the state of the pleadings and evidence in the cause, it seems to me, it was not error in the court not to have directed said commissioner to enquire and report as to improvements made by defendant, he having failed to claim, or to show to the court, that he had made improvements on the land, either in his answer, or his testimony, or otherwise.

*As to the defendant's third assignment of error.* As will be remembered, the paper writing hereinbefore recited dated the 8th day of December 1853, purporting to be a deed from Thomas Coe and his wife, George Moore and Elizabeth his wife, and Joseph Ogle and Maria his wife, who is the plaintiff, to Benjamin Coe, and filed in the cause by the defendant, for the land in controversy as claimed by the defendant, purports to be signed and sealed by said Joseph Ogle, and the plain-

*Margin notes:*

1877.
Special Term.

Ogle
v.
Adams.

Syllabus 6.

tiff, she making her mark; and it appears by the certificate of acknowledgement, that the said deed was only acknowledged if at all, before one justice of the peace of the State of Ohio.

The law in force, at the time this deed purports to have been acknowledged before a justice of the peace of Monroe county, Ohio, may be found in the 4th section of chapter 121 of the Code of Virginia of 1849; and the same section and chapter of the Code of Virginia of 1860.    Said 4th section provides, "that when a husband and his wife have signed a writing purporting to convey or transfer any estate, real or personal, she may appear before a court authorized to admit such writing to record, or before the clerk thereof, in his office, and if on being examined privily, and apart from her husband, by one of the justices of the court, or by the clerk, and having such writing fully explained to her, she acknowledges the same to be her act, and declares that she had executed it willingly, and does not wish to retract it, such privy examination, acknowledgment and declaration, shall be thereupon recorded in such court, or in the clerk's office; or she may appear before two justices, who shall be present together, or a notary public, within the *United States,* or a commissioner appointed within the same by the govenor of the State, and such justices, notary, or commissioner may so examine her, and if, after such explanation, she make such acknowledgment and declaration, shall certify the same on or annexed to the said writing, to the following effect" &c.

The 7th section of same chapter provides, "that when the privy examination, acknowledgment and declaration of a married woman, shall have been so taken and recorded in court, or in the clerk's office, or when the same shall have been taken and certified as aforesaid, and the writng, to which such certificate is annexed, or on which it is, shall have been delivered to the proper clerk, and admitted to record, as to the husband as well as the wife, such writing shall operate to convey from the wife her

right of dower in the real estate embraced therein; and pass from her and her representatives all right, title and interest of every nature, which at the date of such writing, she may have in any estate conveyed thereby, as effectually as if she were at the said date an unmarried woman; and such writing shall not operate any further upon the wife, or her representatives, by means of any covenant or warranty contained therein."

The interest or share of the plaintiff in the land was devised to the plaintiff, as we have seen, by her father by his last will. It is not devised to her as her separate estate to be held and enjoyed by her free from the control of her husband, &c., but it is devised to her generally, and upon the will taking effect the husband by virtue of his marital rights became entitled to an estate for their joint lives or for his life, if he survived her, if his wife had issue born alive by him. The said deed, having been acknowledged before a single justice of the State of Ohio and admitted to record in Marshall county, is good as to said Joseph Ogle; that is to say it passed to Benjamin Coe the estate of said Joseph Ogle as the husband of the plaintiff in the said land, whether for his life or during the joint lives of the plaintiff and her husband, Joseph Ogle, it is unnecessary at this point to enquire. But the deed not having been acknowledged by the plaintiff before two justices as provided by law, the deed as to the plaintiff is void, and did not pass her estate or interest in said land out of her. Though the statutes authorized *femes covert* to convey their lands, and this authority ought to be construed to comprehend everything properly belonging to the contract of actual sale, yet it does not qualify them to enter into a valid executory agreement to sell; for a prior agreement to sell is not an essential part of the actual selling. If such an agreement could be made binding, it plainly must conform to the statutory directions concerning the executed deed; and thus in the State of Pennsylvania, where the thing, agreed to be

done, is looked upon by the tribunals as done, it might take effect as a conveyance. But in the other States generally, and in England, no executory agreement to convey, formal or informal, with or without the concurrence and joinder of the husband, will bind the wife. Not even a court of equity will give such an agreement effect by decreeing its fulfilment against her. 1 Bish. on the Rights of Married Woman, §§600 and 601. At §599 of same book it is laid down as law, that "if there is a defect in the wife's conveyance, rendering it void at law, it is equally so in a court of equity; and the latter tribunal has no jurisdiction to cure it, or compel a conveyance from her in due form. It is so, even though the purchase money has been paid." See also *Purcell* v. *Goshorn,* 17 Ohio 105 , *Carr* v. *Williaws,* 10 Ohio 305 ; *Leftwitch* v. *Neal,* 7 W. Va. 569. Said third exception is not well taken and is overruled.

*As to the defendant's fourth bill of exceptions.* Benjamin Coe's evidence is taken in the cause by the defendand; and he proves, that the amount of purchase money to be paid for the land was $500.00, and that between two and three hundred dollars thereof was paid to the plaintiff, at the time she signed and acknowledged the said deed before a single justice in the State of Ohio, but that all the rest of the purchase money was paid to Joseph Ogle in three horses, at the price in the aggregate of $217.00, according to his showing. If $217.00 of the purchase money was paid to Joseph Ogle, there was only $283.00 of a balance left that could be paid to the plaintiff, of principal. There may have been some interest; but Benjamin Coe says nothing about interest. It seems that said Maria signed the deed, and received the money paid to her in the presence of her husband, and by his procurement and that of Benjamin Coe.

As before remarked, according to the defendant's answer Benjamin Coe simply conveyed his interest in the land to the defendant, and of course if he had not acquired the title of the plaintiff to the land, he did not

Convey or pass the title of the plaintiff in the land to the defendant. And as Benjamin Coe did not have the interest or title of plaintiff in the land, and only conveyed his interest therein to defendant, the presumption is, in the absence of proper evidence to the contrary, that he did not contract or attempt to convey to the defendant the plaintiff's title or interest, but only such interest as was vested in him. There is no allegation in the defendant's answer that the plaintiff received any part of the purchase money for said land. The fact, that the plaintiff did receive some part of the purchase money, is in no way relied upon or pleaded by the defendant in his answer for any purpose.

The supreme court of Massachusetts have expressed the opinion, that the doctrine of estoppel *in pais* has no application to married women or infants: Bigelow on Estoppels, 443, and cases there cited. At same page of same book it is stated, that parties under disability, as infants and married women, certainly are not estopped, unless their conduct has been intentional and fraudulent. See also 444 note 1. The same book at page 445 says: "In cases of fraud, unmixed with contract however, whether by concealment or active conduct, the current of authority was (in opposition to the doctrine in Massachusetts above related), that a married woman may estop herself to deny the truth of her representations. In the case of *Bedinger* v. *Wharton*, 27 Gratt. 857 and 858, it was held, that whether a contract is executed or executory, it cannot be avoided by an infant on the ground of his infancy after attaining lawful age without returning anything, which may have been received by him in consideration of the contract, and which may remain in his hands on his arrival at such age. When such contract is executory merely, it can be avoided by the infant after attaining lawful age without returning, anything which may have been received by him in consideration of the contract, and which may have been consumed by him during infancy, or may not

remain in his hands on his arrival at lawful age." Whether or not the same principle applies to the case of an executed contract, seems to be left undecided in the last named case, and seems never to have been decided in Virginia. In this case the deed was made by husband and wife, the wife being an infant. And the court does say at page 870, that " the court is further of opinion, that there is no error in the decree appealed from, in not dismissing the original and amended bills in this case, because neither of them contained an offer to return the purchase money.

As before shown the plaintiff's husband, by virtue of his marital rights, had an interest in the land, and that interest, what ever it was, passed by him by said deed to Benjamin Coe, and from Benjamin Coe to the defendant; and he had the full benefit, use and enjoyment of it until the death of plaintiff's husband. Benjamin Coe then did receive consideration for the money paid by him, and that consideration the defendant got the benefit of. But as the deed from Joseph Ogle and his wife to Benjamin Coe, as to the plaintiff, is void, because she was *feme covert*, the defendant now claims, that it was error in the circuit court, to decree the possession of the land alloted to the plaintiff in this cause, without providing for the return of the purchase money paid to her for the same. The contract of sale in this case seems to have been made by Joseph Ogle. It is familiar to all, that by the common law, a *feme covert* could not, by uniting with her husband in a conveyance, bar herself of any estate, of which she was seized in her own right. It is immaterial whether the disability is regarded as having its reason on the principle, that the separate legal existence of the wife is suspended during the marriage, or in the fact that the influence of the husband may be improperly exerted for the purpose of inducing the wife to part with the interest in his favor. The sale itself is one of undisputed nullity: *Carr* v. *Williams, et al.* 10 Ohio 310; *Purcel* v. *Goshorn,* 17 Ohio 105.

In this case Benjamin Coe took and accepted the deed from Ogle and wife, and paid his money, knowing that the plaintiff was a *feme covert,* and that the deed as to her was void; and the defendant, at the time he purchased the *interest* of Benjamin Coe in the land, must be presumed to have known, that the deed was void as to the plaintiff, and that it only passed the estate of Joseph Ogle therein, the defendant having received a deed from Benjamin Coe for his *interest* in the land has, so far as the record of this cause discloses, received and enjoyed all he bought and paid for, and has no claim against the plaintiff for purchase money received by plaintiff from Benjamin Coe. Whether a *feme covert* will be held in any case for purchase money received by her on land, which is her property, subject to the estate of her husband by virtue of his marital rights, and which is not her separate estate, and which is conveyed by a deed from the husband and wife to a purchaser, which is void as to the wife, especially when there is no fraud properly attributable to the wife, as it seems to me is the case in the case at bar, I do not decide; nor do I intend to intimate in what cases of fraud she would be held for purchase money paid her, if any. I will remark however, that the contract of a married woman whether exectuory or executed, is different from that of an infant in this, viz: that such contract of a married woman is void, and in the case of an infant it is voidable. It seems to me, that the defendants fourth assignment of error is not well taken in this case; and it is overruled.

*As to the defendant's fifth assignment of error.* As before stated, the only assignment of error filed by the defendant to the commissioner's report was, that "the rental value of the land is reported too high." I have examined the evidence before the commissioner upon that subject; and while there is conflict in the estimates placed by witnesses on the rental value, considering the whole evidence before the commissioner on that subject I do not feel satisfied that he ascertained and fixed it too high.

1877.
Special Term.

Ogle
v.
Adams.

Syllabus 3, 4, 5.

The defendant's fifth assignment of error is therefore overruled.

*As to the defendant's sixth assignment of error.* After the death of Joseph Ogle the plaintiff and defendant were tenants in common of the whole farm, not devised to Benjamin Coe by the will of Philip Coe, especially after the death of Elizabeth Coe, the widow of Philip Coe. The defendant did not plead or rely upon the statute of limitations of five years as to the rents and profits before the court or the commissioner, as he might have done. The decree, ordering the commissioner to ascertain and report the annual rental value of the lands for each and every year since the 1st day of January 1864 up to the 1st day of January 1874, and what rents and profits the defendant derived annually for said period from the lands, &c., must be regarded as a mere instruction of the court to the commissioner, made by the court in the absence of the plea of the statute of limitations for five years as to the rents and profits, and did not preclude the defendant from relying upon the statute before the commissioner. To estimate the rents and profits from the 1st of January 1864, would be to estimate them for nearly a year over five years before the commencement of this suit. But in the case, cited by defendant's counsel, of *Ruffners* v. *Lewis's ex'ors et al.* 7 Leigh 720, Judge Tucker in delivering the opinion of the court, at page 743, says: "Out of this relation (meaning the relation of tenants in common) grows, I think, the principle that they ought not to be charged with rents or profits, where none have been made (provided they appear to have employed the property in good faith with a view to make it profitable, but have failed in doing so) nor with speculative profits, where the real profits are susceptible of being ascertained. I am not aware however, that this relation would have prevented the operation of the statute of limitations, had it been pleaded. But as it was neither pleaded, nor relied on before the commissioner, it must be taken to

be out of the case. The party might have pleaded the statute to the bill, or upon the *account* he might have insisted on it before the commissioner. For if the defense is set up before the commissioner, the answer to that defense may also be produced. But if the objection be permitted to be made by way of exception only in court, it cannot be properly answered there."

It does not appear, that the defendant relied or insisted upon applying the statute of limitations before the commissioner; nor does it appear, that he even excepted to the commissioner's report for allowing rents beyond five years from the commencement of this suit; nor that he even made the point in any shape before the court below. Under these circumstances the statute of limitations, as to rents and profits, must be considered as out of the case in this Court. It is too late for the defendant to raise that question here under the circumstances; and to allow him to do so, would be to establish a dangerous precedent, one that might, if not in this case, operate surprise, injustice and wrong upon diligent litigants. If defendant in this case has been charged with rent for a longer time than he might have been, if he had availed himself of the privileges accorded to him by the law, it is neither by reason of error in the court or the law, but by reason of his *laches* and neglect. The account of the commissioner was taken in February 1875, and the defendant did not at any time attempt to seek by petition, or otherwise, before the circuit court the benefit of chapter 91 of the Code of 1868; and the account in this case was not ordered or taken under that chapter. The defendant's said sixth assignment of error is not well taken in this Court, and is overruled.

Syllabus 6.

*As to the defendant's seventh assignment of error.* If the defendant claimed and desired the benefit of any improvements, he made on the land before or after the death of Joseph Ogle, he should have made the question before the court before or after the decree of reference, or before the commissioner, and having presented evidence before

the commissioner tending to prove improvements, &c., made by him on the land, if the commissioner failed to allow him for any improvements to which he was entitled under the evidence, he should have excepted to the report of the commissioner upon the subject before the court below; and if the court below made an erroneous decision upon the exceptions, this Court could have reviewed the decision of the court below. But the defendant having failed to file any such exception to the report of the commissioner in the court below, it is too late to raise the question in this court. This Court may correct errors appearing on the face of the commissioner's report, that is, errors which appear upon the face of the report, and are thus there seen without reference to evidence *aliunde* the report itself, where no exception was filed in the court below to the report; but generally where the error, complained of in the report, was not excepted to in the court below, and thus brought before it, this Court will not conssder the error: *Hyman, Moses & Co.*, v. *Smith et al.*, 10 W. Va., 298.

*As to the defendant's ninth assignment of error.* The chief object of the reference to the commissioner was to ascertain, what amount of rents should be paid by the defendant to the plaintiff for the land allotted to her in the partition, as shown by the direction of the decree itself; and the commissioner reported the amount. If the defendant felt, that he was agrieved by the commissioner's not reporting the annual rental value of the whole tract which was partitioned, and not ascertaining thereby the value of the rents defendant should pay to plaintiff, he should have excepted to the report of the commissioner, and thus brought the error of the commissioner, if any, to the attention of the court below for determination and correction for that reason. This assignment of error is not well taken in this Court, and is overruled. *Hyman, Moses & Co.* v. *Smith et al. & Co.*, 10 W. Va. 298.

*As to the defendant's tenth assignment of error.* This

assignment of error is not well taken in this Court, for the reasons hereinbefore stated, as applying to defendant's seventh and eighth assignments of error and others. I have thus considered all the alleged errors in the decrees of the circuit court made in this case, or which have been brought to our attention in argument, and for the reasons hereinbefore stated I do not feel satisfied, that there is error in said decrees, or any of them, for which this Court should reverse the said decrees, or either of them.

The several decrees of the circuit court of the county of Marshall, rendered in this cause on the 15th day of May 1872, the 7th day of January 1874, the 5th day of October 1874 and the 1st day of April 1875, must be affirmed, with costs to the appellee and damages according to law.

THE OTHER JUDGES CONCURRED.

DECREES AFFIRMED.