# SEPTEMBER TERM.

## CHARLESTOWN.

### MOORE *v.* LIGON.

Submitted January 25, 1887.—Decided September 23, 1887.

1. MARRIED WOMAN—CONTRACT.

S. G. L., a married woman, for her separate use, purchased from a commissioner of a court a tract of land, the sale whereof was confirmed and the title retained to secure the payment of the purchase-money. She and her husband, by written contract with M., agreed, that in consideration, that he would pay her for the purchase-money which she had agreed to pay for the land, she would sell and transfer to him her said purchase, and substitute him for herself as purchaser of the land, excepting a specified 20 acres thereof. In compliance with said contract M. was placed in possession of the land sold to him, and he paid for her to the court all her purchase-money. Five years afterwards she refused to comply with her contract and reclaimed her land. On a bill filed by M. against S. G. L. and her husband, praying for specific execution of said contract, and, in case, that the relief could not be had, then praying, that he might be reimbursed the purchase-money so paid by him by a sale of the said land, it was *held* that said contract for the sale of her land was not binding upon said married woman.

2. MARRIED WOMAN—CONTRACT—LIEN.

That the purchase-money so paid to the court by M. was an equitable charge upon said land, which a court of equity would enforce for his benefit by a sale of the land, unless otherwise paid. (p. 151.)

3. MARRIED WOMAN—CONTRACT—ABATEMENT—RENTAL VALUE.

That S. G. L. was entitled to have abated from the purchase-money so paid for her by M. the fair rental value of the land

while he had the same in possession, in the condition in which it was at the time he took possession thereof. (p. 152.)

4. ABATEMENT—RENTAL VALUE OF LAND.

That the true annual rental value of land is not the value of all the farm products which can possibly be realized from its use, when the land is stocked, farmed and managed with the greatest skill and industry, but it is the price which a prudent and industrious farmer can afford to pay for its use, after taking into consideration the probable amount and the market value of his crops, and the probable injuries thereto resulting from the ordinary changes of climate and season. (p. 155.)

5. ABATEMENT—RENTAL VALUE—IMPROVEMENTS.

That M. having made permanent improvements on the land, which greatly enchanced the value thereof, he was entitled to abate from the amount of rents with which he was chargeable the value of said improvements, and all taxes upon the land paid by him while in his possession. (p. 156.)

6. COMMISSIONER—IMPROVEMENTS.

That the Circuit Court did not err in directing its commissioners to ascertain and report the value of the permanent improvements made by M. upon the land, or in abating the amount of rents with which he was chargeable; although no claim for such improvements was made by him in his bill. (p. 156.)

7. COMMISSIONERS—FINDINGS—REVIEW ON APPEAL.

"That, where questions purely of fact are referred to a commissioner to be reported on, his findings will be given great weight, and should be sustained unless it plainly appears, that they are not warranted by any reasonable view of the evidence; and this rule operates with peculiar force in an appellate court, when the findings of the commissioner have been approved and sustained by the decree of the inferior court." See *Handy* v. *Scott,* 26 W. Va. 710; *Boyd* v. *Gunnison,* 14 W. Va. 1; *Graham* v. *Graham,* 21 W. Va. 698. (p. 157.)

Statement of the case by WOODS, JUDGE :

This is the sequel of the case of *Moore* v. *Ligon,* decided by this Court in October, 1883, reported in 22 W. Va. 292–302. When that case was before this Court we decided, that the contract entered into on the twenty third of August, 1877, between Sallie G. Ligon and her husband, John Ligon, of the one part, and Isaac Moore, of the other part, whereby Sallie G. Ligon agreed to sell, transfer and convey to him the lands and rents therein mentioned, upon the payment

by Moore of certain costs and expenses paid by her, and of
$13,277.74 of the unpaid purchase-money for said lands, for
which she had executed her obligations, was not binding on
her, and that Moore having paid for her said purchase-money,
was entitled to have all the purchase money which he had
paid for her treated as an unauthorized payment, and as,
therefore, not discharging the debt due from her to the court,
from whose commissioners she had purchased the lands, and
to have the payment thereof enforced against her for his
benefit, if necessary to do so by the sale of said land; and
remanded the cause to the Circuit Court, "to be therein
further proceeded with, according to the principles laid down
in the opinion of this Court, and, further, according to the
principles governing courts of equity." After the cause was
so remanded, it was heard on the ninth of April, 1884,
"upon the papers formerly read, the decrees entered therein,
mandate of the Supreme Court of Appeals, rule against
Sallie G. and John Ligon to answer to the bill, who still
failed to answer," and on considertion thereof it was ad-
judged, ordered, and decreed that, unless Sallie G. Ligon,
within ten days from that date, executed to the plaintiff
(Moore) a deed in fee-simple, conveying to him said lands,
then John W. Stephenson, who by consent of parties was
appointed a special commissioner for that purpose, should
make, state, and report to the court the following ac-
counts: "(1) What amount of money has been paid to and
for the said Sallie G. Ligon by the plaintiff under and by
virtue of the contract filed with the bill, and dated twenty
third day of August, 1877, with interest on such sum from
date of payment to the date of its report. (2) The annual
amount of the rents and profits of said land in the condition
*as of the time it came* into the possession of the plaintiff, less
the taxes paid by him on the said land. (3) The value of
any permanent improvements made upon said land by the
plaintiff since it has been in his possession. (4) Any dam-
ages done to said land by plaintiff since he has had posses-
sion of the same,—and that he shall strike a balance
showing how the account will stand between the plaintiff
and defendants. The commissioner shall reduce the evidence
to writing, and report the same with his report to this court.

Before taking this account, he shall give reasonable notice in writing of the time and place of taking the same to the respective parties."

In pursuance of this order of reference, the commissioner took the depositions of 41 witnesses upon the questions referred to him, among whom were the plaintiff and the defendant John Ligon, which, with his report, were returned by him on the twentieth of October, 1884. His report was made in two aspects; in one of which, he allowed the plaintiff an abatement of $1,000.00 against the rents and profits, for the increased value of the land, on account of permanent improvements made thereon after his purchase; and in the other no allowance was made to the plaintiff for his improvements. By his report, in the first aspect, the commissioner ascertained the amount due the plaintiff on account of the purchase-money paid by him for the defendant Sallie G. Ligon, on the first of October, 1884, to be the sum of $20,809.59; of which $15,907.78 was principal, and in the further sum of $1,000.00 on account of his permanent improvements made on the land; and that the defendant was entitled to abate therefrom the rental value of said land, which he ascertained to be $800.00 per year, from the first of October, 1877, to the first of October, 1884, less the taxes thereon paid each year by the plaintiff, with interest on the residue of said annual rents from the end of each year, amounting on the first day of October, 1884, to the sum of $5,260.43, of which $4,499.46 was principal, and that the balance due from her to the plaintiff on the first of October, 1884, was $16,549.16. By the second aspect of his report, which allowed nothing for improvements, the commissioner ascertained that the amount due the plaintiff on the first of October was $15,549.16. To this report Sallie G. Ligon excepted, alleging that the commissioner erred (1) in reporting that the plaintiff was entitled to any other or greater sum than the amount of her bonds for said unpaid purchase-money and the interest thereon; (2) in fixing the commencement of the rents and profits on the first of October, 1877, instead of the second of May, 1877; (3) in what constituted "rents and profits" in this case; (4) in fixing the rental value of the land at $800.00 per year; (5) in reporting an account of

permanent improvements; (6) in failing to report an itemized statement of the alleged permanent improvements and the amount allowed for each; (7) because the amount allowed for permanent improvements was excessive, and because the plaintiff was charged nothing for the use of them; (8) because there was no account of "profits" found by the commissioner; (9) because no allowance was made to her for injuries to the farm by decay, removal of fencing, neglect, etc.; (10) because the report failed to estimate the rent, for all the time, and according to the actual condition of the farm during the occupancy of the plaintiff; and, (11) because the fees charged by the commissioner were erroneous.

On the seventh of April, 1885, the case was again heard, upon the papers formerly read; upon the bill taken for confessed as to John Ligon; upon the answer of Sallie G. Ligon, filed on that day, general replication thereto; upon the report of said commissioner, the said exceptions thereto, and the depositions and exceptions thereto of plaintiff and defendants. On consideration thereof, and court overruled all the exceptions to the depositions and to the commissioner's report, rejected that aspect thereof which disallowed the claim for improvements, and in all other respects confirmed the report. And all parties admitting at the hearing that the plaintiff, for the rent of the land from the first of October, 1884, the date of said report, to the first of April, 1885, was liable for the further sum of $400,00, less $131.19, the taxes for 1884, paid by him after the making of the commissioner's report; and was further liable for $134.98 additional interest upon the principal sum of $4,499.46 of said rents; and that he was entitled to charge Sallie G. Ligon with the further sum of $477.23 of additional interest on the principal sum of $15,-907.78, paid for her as aforesaid. It was further adjudged, ordered and decreed that, unless the defendant Sallie G. Ligon, within 30 days from the adjournment of the court, pay to the plaintiff the sum of $16,623.00, with interest from the first April, 1885; and the cost of suit, then special commissioners, named in the decree, should sell the land upon certain terms therein mentioned, etc., and out of the proceeds of sale pay the plaintiff the amounts therein decreed to him, and the residue, if any, pay to Sallie G. Ligon. To this decree the

Defendant Sallie G. Ligon obtained this appeal and *supersedeas.*

*R. S. Turk* and *W. A. Quarrier* for appellant.

*R. T. Dennis* and *R. L. Parrish* for appellee.

WOODS, JUDGE:

The appellant, for grounds of error, assigns the following : (1) In directing its commissioner to ascertain and report any other sums paid by the appellee than the amounts of her obligations to commissioners Mathews and Skeen; (2) in directing the annual rental value of the land to be estimated as of the time it went into the possession of Isaac Moore; (3) in directing an account to be taken of the improvements; (4) in overruling appellant's exception to the commissioner's report; (5) in directing the sale of the land "in the bill and proceedings mentioned," when there is nothing contained therein sufficient to warrant the commissioners to sell any particular tract of land; (6) in not directing a conveyance of the legal title to the appellant before decreeing a sale; (7) in giving so short a time in which to redeem the land, and between the payments.

There is nothing in the first error alleged. The action of the Circuit Court in regard thereto is exactly in accordance with the directions of this Court in *Moore* v. *Ligon*, 22 W. Va. 302, wherein we say: "Of course, if it becomes necessary for the court to enforce the payment of the portion of the purchase-money paid by the plaintiff, either to *the court* or to the female defendant, treating it as unpaid purchase-money, she should be allowed, as against it, the rents and profits of this land, *if any were received* by the plaintiff, less the taxes on the land, if any, paid by him." It appears from the proof in this record that Moore paid to the commissioners of the court, from whom Mrs. Ligon purchased the land, not only her obligations, amounting to $13,277.74, executed for part of the purchase-money of the land, but also her down payment of $722.26, making in all the full price of $14,000.00 which she agreed to pay for it; the payment whereof was secured by the vendor's lien on the land, thus placing himself in the very condition, in which this court said he would

be entitled to enforce the payment of these sums "paid by him to the court."

Neither did the court err in directing its commissioners to ascertain the rental value of the land in the condition it was at the time Moore obtained the possession thereof. This was the rule adopted in South Carolina in *Thompson* v. *Bostick*, 1 McMul. Eq. 75, and by the Court of Appeals of Virginia in *Early* v. *Friend*, 16 Gratt. 21; *White* v. *Stuart*, 76 Va. 556. This rule in the case at bar does justice to both parties. It does not make the compensation of Mrs. Ligon depend upon the accident, that Moore was a good or a bad farmer, a prudent and careful man, or a wild, imprudent, or reckless one. It is just to Moore, who occupied and used the land instead of renting it out; and he should be held accountable only to the same extent, as if he had rented it out and received the rent.

Neither did the Circuit Court err in directing its commissioners to state an account of the improvements made upon the land by Moore after it came into his possession. This possession he acquired, and for five years quietly held and enjoyed, with the knowledge and consent of Mrs. Ligon, relying on her good faith to comply with the terms of her agreement. During all this time she quietly stood by, knowing that Moore, in compliance with the terms of said agreement, was paying her debt to the court, amounting to more than $16,000.00, paying the taxes on the land, amounting to nearly $150.00 a year, repairing buildings, fencing and beautifying the dwelling-house and its surroundings, planting orchards, and making many other permanent improvements which greatly enhanced the value of the farm. The increase in the value of the land added by these improvements, in the opinions of the witnesses, varies from $750.00 to $2,000.00, and the commissioner was fully warranted in ascertaining their value to be $1,000.00, and he accordingly so reported. It is true that the plaintiff makes no claim for these improvements, but as he was not permitted to enforce the specific execution of his agreement against Mrs. Ligon, and only permitted to charge the land with the payment of the purchase-money which he had paid for her to the court, it became necessary to state an account between them to ascertain the amount

he was equitably entitled to demand. He had enjoyed the use of the land. He should therefore account to her for the rental value of the land in the condition in which it was when he obtained possession thereof. She should repay the taxes, if any, which he had paid on the land while he occupied and enjoyed it. She should repay to him the purchase-money he had paid for her, with its interest, and he should surrender to her the land; but, in doing so, he surrendered to her his permanent improvements made thereon; and she not only received from him her land of the value it possessed when he received it, but that value enhanced $1,000.00 by his improvements! To permit her to retain this unfair advantage would be inequitable and unjust, and in the case in judgment, would be to reward her perfidy. Moore's claim for the value of these improvements stands upon the highest grounds of justice and equity; and as in this case he could not otherwise recover them, the court did not err in abating the value thereof from the rents and profits of the land. While it is the better mode to claim such improvements in the pleadings in the cause, yet it is not absolutely necessary to do so; and if the court directs its commissioner to ascertain their value, either party may appear before him and prove the same. In this case both parties did so, and because the commissioners reported the value of the improvements, the defendant excepted to the report, which exception the court overruled. This point was expressly decided by this Court in *Ogle* v. *Adams*, 12 W. Va. 213, Syllabi, 6.

The fourth ground of error assigned was overruling her exceptions to the commissioner's report. The first exception is the same as the first ground of error assigned, and has been already considered. The same is true of her fifth exception; the same having been already considered under her third assignment of error, and in regard to it nothing further need be added. There was nothing in her sixth exception, because the compensation which may be claimed for permanent improvements is not the actual value or the cost of any or all of them, but only the *enhanced value* of the land, resulting from such improvements, which is generally much less than the cost of making them, or than their several

value when made. It was therefore unnecessary for the commissioner to report an "itemized statement" of such im. provements, and he did not err in reporting their value in a gross sum. Her eleventh exception was untenable in every view of the case, as it wholly failed to specify in what respect the commissioner had charged erroneous fees. It is well settled that the alleged error of the commissioner complained of must be particularly designated, and, unless the exception does so, the court will disregard it.

Did the commissioner err in fixing the date for the commencement of the rents on the first of October instead of the second of May, 1877? It is insisted, on behalf of the appellant, that inasmuch as the agreement between her and Moore transferred to him all the rents of the land accruing, and which had accrued, to her, from the second of May, he should account for the rents from that day until the first of October, at which time he obtained the full possession of the land, whether he in fact received any rents from her tenants or not. From what appears in the record, the only tenant from whom rents could accrue was S. L. Gibson, who had rented the most valuable part of the farm from John Warrick three or four years before Mrs. Ligon purchased the same at a sale thereof for the payment of his debts; and Gibson had so rented part of the land at the annual rent of $400 in order to reimburse himself for a debt against Warrick for which Gibson, as sheriff, had made himself liable, and been compelled to pay. There is no proof whatever that Moore received any rents from any tenant on the land, or that by the exercise of due diligence, he could have received any such rents. If Mrs. Ligon desired to charge him with such rents, the burden was upon her to show the amount thereof, and from whom the same were due, and, failing to do so, she is not entitled to charge him with such rents; nor is there any proof to show that he had any beneficial use of said land until the first October, 1877, as ascertained by the commissioner.

Neither did the commissioner err in his view of what constitutes rents and profits, nor in failing to state an account of the "*profits*" realized by Moore from the land. If Moore had occupied and used the lands for Mrs. Ligon as her trustee or agent, he might properly be charged with all the *rents, issues,*

*and profits*, derived by him from the use of the trust property. But he did not enter into, hold, or use the lands as such agent or fiduciary. There was no relation of trust or confidence existing between them. He was not, like such fiduciary, to manage the land to the best advantage, and make all the profit he could for Mrs. Ligon, and to keep and render to her a full and fair account of his transactions in regard to this land; nor was she entitled to share in the profits actually made by the application to the land of his labor, skill, and property. She was entitled to the fair yearly value of the property in the condition in which it was at the time it came into his possession, and no more. *White* v. *Stuart*, 76 Va. 566. This rental value does not consist in hypothetical estimates of speculative profits which might have been, or which may be, realized from the use of the land when stocked, farmed, and managed with the greatest industry and skill. *Early* v. *Friend*, 16 Grat. 21; Co. Litt. 172; 1 Story Eq. Jur. 446. Such a measure of value no prudent man could afford to pay; for in most cases it would greatly exceed what the owner could ordinarily realize from the use of his own land. The true annual rental value of land is the price which a prudent, industrious farmer could afford to pay for its use, after taking into consideration the amount of and the probable market value of his crops, and the probable injuries thereto resulting from the ordinary changes of season and climate. A still more satisfactory reason why the commissioner failed to report an account of the *profits* made by Moore in addition to the rents, may be found in the fact that there was no evidence of any such *profits* before the commissioner; and the same is equally true in relation to her ninth exception, as there was no evidence, that Moore had injured the land while the same was in his possession. From what we have already said, it is clear, that the commissioner's report was not stated upon an erroneous principle.

It is strongly insisted by the appellant's counsel, that the commissioner fixed the annual rental value of the land at a grossly inadequate price, and far below the value proved. It is true, that a very wide discrepancy exists between the estimates as to the annual rental value of this land,

as given by the witnesses for the appellant and for the appellee,—those for the appellant fixing its rental value at sums ranging from $1,800.00 to $2,750.00, and those of Moore, from $700.00 to $850.00, and one at $1,500.00. Admitting the witnesses to be equally intelligent and credible, this discrepancy must necessarily result from the different modes of estimating the annual rental value of the land, and the different elements entering into their several calculations. It is not pretended, that $14,000.00 was not a full, fair price for the farm; nor that the amount of improved land exceeded 500 acres. The lowest estimate of the appellant's witnesses was $1,800.00 per year, equal to 12 6-7 per cent., the highest at $2,750.00, equal to 19 3-7 per cent. per annum upon the price of the land. One witness for the appellant fixes the rental value at $2,160.00, equal to 15 3-7 per cent., another at $1,900.00, equal to 13 4-7 per cent., upon the price of the farm ; but these witnesses could name only two or three farms that they thought paid over six per cent. upon their actual values. Upon a careful examination of the testimony of the witnesses of the appellant, it is quite apparent that the values given by them were not based upon knowledge of what the land had actually produced in any given year, but upon what they believed it was capable of producing. Estimating that the land was capable of grazing and feeding during the year from 80 to 100 head of three-year-old cattle, and that their keeping derived from the land would be worth from $1.50 to $2.00 per month, and that said cattle during the year would increase in weight 300 or 400 pounds; that such cattle could be bought for four, and sold the next year for five cents per pound,—they reached the conclusions, given in their several estimates, of the annual rental value of land. It is evident that this mode of valuation could not be sustained even against a fiduciary using trust-property; for such values are merely speculative, and are entitled to very little consideration. The commissioner properly regarded these estimates as based upon unsound premises, and adopted the valuation of $800.00 per year, being very nearly the average value of the estimates of all Moore's witnesses, and very nearly equal to the annual interest upon the price given for the land.

This was purely a question of fact; and the commissioner to whom this inquiry was directed, amidst all this conflict of testimony, ascertained and reported the annual rental value of the land at $800.00, and the appellant, in the court below, excepted to this report on the ground, that this sum was grossly inadequate, and the court, after mature consideration, overruled the exception, and approved and confirmed this finding of the commissioner. Under these circumstances, the finding of the commissioner will be given great weight, and should be sustained, unless it plainly appears, that it is not warranted by any reasonable view of the evidence; and this rule must operate with still greater force in this Court, where the findings of the commissioner, as in this case, have been approved and sustained by the decree of the Circuit Court; and in such case, this Court can interfere only when the report and the decree are plainly against the evidence. *Handy* v. *Scott*, 26 W. Va. 713; *Boyd* v. *Gunnison*, 14 W. Va. 1; *Graham* v. *Graham*, 21 W. Va. 698.

There is nothing in the appellant's fifth and sixth assignments of error. The land was sold and purchased by the appellant under the decrees and proceedings in the chancery cause of *Woods' Ex'r* v. *John W. Warrick and others*, pending in the Circuit Court of Pocahontas county, and the record of said chancery suit is filed with, and made part of, the plaintiff's bill in this cause, whereby the description of the several parcels of land purchased by the appellant, and decreed to be sold, fully and at large appear. From the allegations of the plaintiff's bill, which are not denied, the legal title to these lands has been conveyed by the commissioner of the court in the cause of *Woods' Ex'r* v. *Warrick etc.*, to the plaintiff, Moore, and it is necessarily before and within the control of the court.

The period given for the redemption of the land, and the credits upon which the land is directed to be sold, are the usual time and credits allowed, and we find nothing in this record upon which any just claim for the peculiar indulgence can be forwarded.

We are therefore of opinion, that there is no error in the

decrees complained of, and the same are therefore affirmed, with costs, and $30.00 damages.

AFFIRMED.