# CHARLESTON

## TITCHENELL *et al* v. TITCHENELL.

### Submitted March 11, 1914.  Decided April 28, 1914.

1. DEEDS—*Construction—Transfer of Title.*

    A deed using appropriate terms of immediate grant passes the title on delivery, though it be one given in exchange for another, granting other encumbered land, and recite the consideration as $800.00 in land, to be conveyed by deed with general warranty, "when the deed referred to is established and the record is acknowledged", both deeds having been executed and delivered on the same day.  (p. 239).

2. TRUSTS—*Resulting Trust—Subsequent Payment.*

    The subsequent purchase of the encumbered land from the grantors thereof and removal of the incumbrance, raises no resulting trust in the land for which it had been exchanged in favor of the purchaser, nor constitutes a valid purchase thereof by him.  (p. 241).

3.  EVIDENCE—*Impeachment—Evidence.*

> An ancient deed, bearing date in the year in which the apparent grantors admit the execution of a different kind of deed to the apparent grantees and certificates of acknowledgment apparently signed by the officer before whom they say they had acknowledged such different deed, and produced from proper custody, cannot be impeached by the mere recollections of witnesses as to the contents of the deed they executed and the size of the paper.   (p. 242).

4.  DEEDS—*Construction.*

> A deed, describing itself as one between the grantors of the first part, "and L. T., the wife of S., grantee, her heirs or assigns, in case the said S. T. survives L. T., his wife. The said S. T. is to have control of the farm hereinafter described and named, during his life time;" and proceeding as follows: "The aforesaid grantors doth this day grant, bargain, convey unto the aforesaid grantee with general warranty with the above consideration the farm now occupied by the above named S. T. and L. T.," conveys to S. T. a life estate in the land and to L. T. the remainder in fee simple. (p. 242).

5.  HUSBAND AND WIFE—*Conveyance by Married Woman—Validity.*

> A paper executed by a married woman, purporting a sale of her land, but not acknowledged as required by law, is void.   (p. 243).

6.  ADVERSE POSSESSION—*Operation Against Remainderman—Commencement of Limitation Period.*

> A vendee in possession under a deed or contract of sale, executed jointly by a life tenant and the remainderman in fee and valid as to the former but void as to the latter, cannot claim the benefit of the statute of limitations as against the remainderman, until after the death of the life tenant, for no right of action accrues to the remainderman until the happening of that event.   (p. 243).

7.  SAME—*Ouster—Exclusive Possession—Remainderman.*

> Nor, if the vendee in such case was a cotenant of the vendors before the execution of the deed or contract, does his subsequent exclusive possession work an ouster of the remainderman.   (p. 243).

Appeal from Circuit Court, Preston County.

Suit in partition by Peter E. Titchenell and others against Joel Titchenell. From a decree for plaintiffs, defendant appeals.

*Reversed and Remanded.*

*A. G. Hughes* and *F. E. Parrack,* for appellants.

*P. J. Crogan* and *A. Bliss McCrum,* for appellees.

POFFENBARGER, JUDGE:

Joel Titchenell complains of a decree in a partition suit, according to each of his brothers, Peter and Silas, a one-third interest in a tract of land, containing 120 acres, and overruling his claim of sole ownership, based on alleged payment of all the purchase money and title by adverse possession.

The salient facts are as follows: The land was conveyed to the three brothers by C. B. Nine by a deed, dated March 28, 1872, in exchange for a tract, containing 94 acres, conveyed by them to Nine. Joel claims the 94 acre tract, constituting the sole consideration for the conveyance, was paid for by him, but, conceding the facts relied upon as showing such payment, the exchange was made before the payment. In other words, the 94 acre tract had been conveyed to Nine and the 120 acre tract to him and his brothers, before he obtained any deed for the former and before he had done the acts by which it is claimed he became entitled to it. Hence, no trust in the 120 acre tract could have resulted to him, and he may not have acquired an equitable title from his brothers by parol purchase or ouster of them as his cotenants. The 94 acre tract was a part of a tract of 390 acres, purchased by Stephen Titchenell and his five sons from John Rhodeheaver, and conveyed to them by deed dated March 28, 1867. A short time after this conveyance, 106 acres of the tract was set apart to Noah Titchenell, one of the sons. John W. Titchenell verbally sold his interest to his brother Joel. Then a verbal partition was made under which the father, Stephen Titchenell, took the 94 acre tract and Peter and Silas 50 acres each and Joel 100 acres. In March, 1868, all of these parties except Noah, became jointly indebted to Jones & Nutter in the sum of $498.29, and Silas, Peter and Joel executed an agreement by which they gave a lien upon the land, less the 106 acres, set apart to Noah, to secure the payment of it. The exchange of the 94 acres for the 120 acres was made, as has been stated, March 28, 1872. On March 29, 1872, Jones & Nutter recovered a judgment against Joel and Peter for $214.00. The deeds for the 94 acres to Nine and from Nine for the 120 acres were recorded March 30, 1872. In the same

month, Jones & Nutter brought a suit to enforce their lien against the 390 acre tract, less the 106 acres, and obtained a decree under which the interest of Silas was sold and purchased by Jones who resold it to Joel, in April, 1874, about two years after the 94 acre tract had been conveyed away and after the 120 acre tract had been acquired. In July, 1873, Joel bought Peter's 50 acres, his share of the 390 acre tract, set apart by the verbal partition, and it was conveyed to him by deed. By deed bearing date July 30, 1874,. Stephen, Noah and John W. Titchenell and their wives conveyed to Joel the 390 acre tract, less the 106 acres set apart to Noah, in consideration of his assumption of the Jones & Nutter debt. By a deed dated October 16, 1874, Joel conveyed the same land, less the 94 acres and the 106 acres, to Moses Titchenell in consideration of $1,000.00, out of which he paid off the Jones & Nutter debt.

These transactions left no title to the 94 acres in Joel and gave him paper title to one-third of the 120 acre tract. At the date of the satisfaction of the Jones & Nutter debt, Nine was the owner of the 94 acre tract and had been for two years. Joel, Peter and Silas were the joint owners of the 120 acre tract which had been conveyed in consideration of the 94 acre tract, owned at the time of the conveyance by Joel, Peter, Silas and perhaps others of the Titchenell family, or possibly by Stephen, as it had been set apart to him by the verbal partition. Joel did not acquire the interest of Silas and Peter until long after the exchange made in 1872. It is true the 94 acre tract was encumbered by the Jones & Nutter debt at the date of the exchange and that the exchange of deeds contemplated removal of the encumbrance by the Titchenells. They conveyed with general warranty and covenanted that they had good right to convey and the deed from Nine recited the consideration as $800.00 in land, to be conveyed by deed with general warranty, ''when the deed referred to is established, and the record is acknowledged.'' Joel Titchenell claims the title to the 94 acre tract did not pass to Nine by this deed, until the removal of the encumbrance thereon, but it made a present grant, not one *in futuro,* and was recorded March 30, 1872, the date of the recordation . of the deed from the Titchenells for the 94 acre tract. Likely

it was the unexpressed intention of the parties to withhold title until after the removal of the encumbrance, or to make the exchange ultimately depend upon that, but effect must be given to the deeds according to the intent expressed therein. Nothing on the faces of the deeds says title was not passed by the delivery threof. On the contrary, they disclose express intent to effect an immediate exchange of titles.

As the 94 acre tract did not, at the date of the exchange, belong to Joel, and he had not paid the purchase money thereof, we perceive no ground upon which the equitable title to the 120 acre tract could have vested in him at the time. A resulting trust arises on the payment of the purchase money at or before the execution of the deed or upon some equitable circumstance existing at the time. No such prior or contemporaneous payment, obligation to pay or other equitable circumstance or condition in Joel's favor existed at the date of the conveyance.

He afterwards paid for the 94 acre tract and may have had a verbal contract or understanding that the 120 acre tract should be or become his in consideration thereof, or he may have had a cause of action at law or in equity against Peter and Silas, arising out of these subsequent transactions; but if he did, equitable title in him to the whole of the 120 acre tract does not necessarily follow. If it was intended or expressly agreed that he should have the two-thirds thereof, conveyed to him by Nine, the arrangement was one of purchase and it is wholly denied and repudiated by the plaintiffs and not clearly proven by the defendant. He only proves circumstances from which an implication of such agreement might arise, but he proves no such express agreement. Though the statute of frauds is not relied upon in the pleadings, there is no admission of an agreement or contract of sale and the defendant does not rely upon one. His principal contentions are acquisition of title by payment of the purchase money, title under a certain deed and contract, not yet referred to herein, and title by adverse possession. If, however, there was a verbal contract of purchase, it is utterly inoperative as to the interests then held by Peter and Silas, because they conveyed their interests to their father and mother by a deed dated, August 18, 1874.

The plaintiffs deny the execution of said deed, but the testimony adduced to impeach it wholly fails. They admit the execution of a deed in the year in which this one is dated, 1874, which they say conveyed only a life estate to each of the grantees therein, but for the character of the deed, admittedly executed by them, they depend upon their memories of a transaction more than 35 years old. The deed is an ancient one, produced by the proper custodian. It was found by Joel Titchenell among the papers and effects of Stephen Titchenell, in the house in which he had resided, just where the deed executed by the plaintiffs would naturally have been left. It was acknowledged before the notary who they say took the acknowledgment of the deed executed by them and it bears every appearance of genuineness. It is rather contended also that this deed, if genuine, did not convey to Lydia Titchenell, the wife of Stephen Titchenell and mother of the grantors, a remainder in fee simple, but only a life estate. This contention likewise fails. In the introductory part thereof, she is described as the grantee, and the deed is recited to have been made between the grantors and her, describing her as "the wife of Stephen, grantee, her heirs or assigns", and then proceeds as follows: "In case Stephen Titchenell survives Lydia Titchenell, his wife. The said Stephen Titchenell, is to have the control of the farm hereinafter described and named, during his lifetime." Then follows this: "The aforesaid grantors doth this day grant, bargain, convey unto the aforesaid grantee with general warranty with the above consideration the farm now occupied by the above named Stephen Titchenell and Lydia Titchenell." Nowhere in the deed is there a word purporting to limit the grant to Lydia Titchenell so as to make it anything less than one in fee. As to Stephen Titchenell, there is a limitation to a life estate. The only construction of which the deed is susceptible, therefore, is a grant of a life estate to Stephen and the remainder in fee to his wife. Joel Titchenell is mentioned as one of the grantors in this deed along with Peter and Silas, but never executed it. The one-third granted to him by Nine, therefore, remained undisposed of in him, but the two-thirds granted to Peter and Silas thus passed to

and became vested in Stephen for life with a remainder in fee to Lydia, his wife.

Joel claims to have purchased these interests from his parents, but produces as evidence of his purchase only a written instrument, acknowledging the receipt of $100.00 from him, and reciting that they gave him possession of the land on which they resided and the right, title and claim they then had. This instrument bears the signatures and seals of Stephen and Lydia and is witnessed by Noah Titchenell. It is not even a good contract for the purchase of the interest of Lydia Titchenell. Being a married woman, she could part with her title only in the manner prescribed by the statute. The acknowledgment required by law was wanting. *Simpson* v. *Belcher,* 61 W. Va. 157; *Amick* v. *Ellis,* 53 W. Va. 421; *Rosenour* v. *Rosenour,* 47 W. Va. 554; *Moore* v. *Ligon,* 30 W. Va. 146.

Though the agreement is void as to her, it was valid as to Stephen and passed at least the equitable title to his life estate, with right of possession. Under it, Joel had right of possession against Lydia Titchenell, the owner of the remainder in fee, wherefore there was no right of action in her or her heirs, until the death of Stephen, which occurred only about four years before this suit was brought. Obviously, therefore Joel did not acquire the title by adverse possession, if the paper can be regarded as color of title. *McNeely* v. *South Penn Oil Co.,* 52 W. Va. 616; *Depue* v. *Miller,* 65 W. Va. 120; *Central Land Company* v. *Laidley,* 32 W. Va. 134. Though he was a cotenant, owning in fee one-third of the tract, the result must be the same, for Lydia had no right of possession until the death of Stephen, the life tenant, and could not be ousted. The cotenancy, as regards the freehold in possession, was between Joel and his father, not between him, on the one hand, and his father and mother, on the other. The mother, having no immediate right of enjoyment cannot be deemed to have been excluded therefrom by any hostile claim or action by Joel. *Lynch* v. *Brookover,* 72 W. Va. 211, 77 S. E. 983.

From these conclusions it follows that Joel Titchenell owns a one-third interest in the land as the grantee of Nine and such additional interest as he has inherited from his mother, along with her other heirs. Both he and the plaintiffs have

been laboring under a misapprehension as to their rights. He is entitled to more than one-third and neither of them is entitled to one-third. Proceeding under this erroneous impression, they have no doubt omitted necessary parties to the suit. The testimony shows John W. Titchenell, one of the heirs of Lydia Hitchenell, is still living and others may be.

For the reasons stated, the decree will be reversed and the cause remanded with leave to amend by making such new parties as are necessary and for further proceedings.

*Reversed and Remanded.*