[No. 15999.  Department One.  February 7, 1921.]

MORGAN V. COCHRAN, *Appellant*, v. IRWIN E. COCHRAN, *Respondent*.[1]

TRUSTS (13, 19)—RESULTING TRUSTS—CREATION AND EXISTENCE—EVIDENCE—SUFFICIENCY. A resulting trust in mortgaged land is not created in favor of one who advanced part of the money to redeem from a foreclosure sale, whereby the land was restored to the mortgagor; since the mortgage was a lien only, leaving title at all times in the mortgagor, and a resulting trust does not arise in favor of one who voluntarily discharges a lien.

Appeal from a judgment of the superior court for Benton county, Truax, J., entered January 7, 1920, upon findings in favor of defendant, in an action to quiet title.  Reversed.

*Stephen E. Chaffee,* for appellant.

*G. W. Hamilton* and *Thos. H. Wilson,* for respondent.

PARKER, C. J.—The plaintiff, Morgan V. Cochran, commenced this action in the superior court for Benton county against the defendant Irwin E. Cochran, and others, seeking a decree quieting title in himself to a quarter section of land in that county.

The record brought here from the superior court indicates that the trial upon the merits proceeded as though Irwin E. Cochran was the only defendant, and resulted in a judgment decreeing title to an undivided 9/28 of the land to be in the plaintiff, and title to an undivided 19/28 of the land to be in the defendant Irwin E. Cochran, as prayed for in his affirmative answer and cross-complaint.  From this disposition of the cause, the plaintiff has appealed to this court.

Respondent's claim of title to the undivided 19/28 of the land and the trial court's judgment, are rested

[1]Reported in 195 Pac. 224; 198 Pac. 270.

upon the theory of a resulting trust arising in favor of respondent and against appellant, by reason of respondent having contributed towards and paying to the sheriff of Benton county 19/28 of the amount of the redemption money necessary to redeem the land from a sale thereof made under a judgment of the superior court of that county foreclosing a mortgage upon the land.

There seems to us to be but little, if any, room for controversy over the controlling facts of this case. They may be summarized as follows: In April, 1913, appellant, being then the owner of, and vested with full legal title to, the land, executed a mortgage thereon to secure an indebtedness of two thousand dollars owing by him to the mortgagees. In September, 1916, the mortgagees were awarded judgment of foreclosure of the mortgage, by the superior court for Benton county. Execution being issued directing the sale of the land to satisfy the judgment, a sale of the land was accordingly made on October 28, 1916, at which time the Connecticut Investment Company became the purchaser of the land, resulting in a certificate of sale being accordingly issued by the sheriff to that company. Respondent alleges in his cross-complaint:

"... during the year 1917 and prior to October 29, 1917, the plaintiff M. V. Cochran and this defendant Irwin E. Cochran made every effort to either sell the above described land or to make a loan in order to redeem it from the execution sale, the plaintiff M. V. Cochran not having the funds necessary to redeem, the plaintiff M. V. Cochran had decided to abandon the land and that prior to the 29th day of October, 1917, the plaintiff M. V. Cochran finding he was unable to procure the funds to redeem the aforesaid land from said execution sale, he, the said plaintiff M. V. Cochran, and his brother, Irwin E. Cochran, this defendant, agreed to and did jointly furnish the money to redeem the said land from said execution sale, which required

in the aggregate the sum of $2,900; pursuant to which agreement the said M. V. Cochran furnished $900 and this defendant furnished the sum of $1,900 of said amount necessary to redeem said land, all of which was paid to said sheriff of Benton county, by this defendant on the 29th day of October, 1917, whereupon the said sheriff delivered to this defendant a certificate of redemption to the plaintiff M. V. Cochran reinstating the legal title in the name of the plaintiff.''

We shall assume these pleaded facts to be true except as to the appellant's decision to abandon the land, though we regard that fact as immaterial to our present inquiry. The record is wholly barren as to any information as to what understanding existed between appellant and respondent at the time of the redemption, touching the question of respondent's acquiring any interest in the land by reason of his contributing and paying towards its redemption from the foreclosure sale; nor does the record furnish us any information touching the question of what understanding existed between them at the time of the redemption as to how or when, if at all, appellant was to reimburse respondent for the amount so advanced and paid by him in effecting the redemption. There is evidence of acts and language of respondent occurring after the redemption, strongly indicating that respondent regarded the obligation of appellant to him merely as that of a debtor, owing him the amount advanced. No claim seems to have been made to the land by anyone other than appellant, until the spring of 1919, when respondent made claim to the whole of it as part of the estate of the deceased mother of appellant and respondent, respondent being then administrator of the mother's estate, which claim prompted appellant to soon thereafter commence this action to quiet his title to the land as against all of the mother's heirs, including the respondent.

We have seen that the theory of counsel for respondent is not that appellant is indebted to him, but that he is entitled to be adjudged the equitable owner of 19/28 of the land by reason of having advanced that proportion of the money which effected its redemption from the mortgage foreclosure sale. So it seems that the question here to be answered is whether or not respondent is entitled to be adjudged the owner of an undivided 19/28 of the land upon the theory that there has arisen a resulting trust in his favor against appellant, from the fact that he advanced and paid from his own money 19/28 of the amount necessary to effect the redemption of the land from the mortgage foreclosure sale.

Counsel for respondent invoke the general rule, a brief statement of which is to be found in 3 Pomeroy, Eq. Juris. (4th ed.), § 1037, as follows:

"In pursuance of the ancient equitable principle that the beneficial estate follows consideration and attaches to the party from whom the consideration comes, the doctrine is settled in England and in a great majority of the American states, that where property is purchased and the conveyance of the legal title is taken in the name of one person, A, while the purchase price is paid by another person, B, a trust at once results in favor of the party who pays the price, and the holder of the legal title becomes a trustee for him."

In 26 R. C. L. 1227, the rule is stated in a form rather more directly applicable to the great majority of cases wherein it is invoked, as follows:

"If one person buys land with the money of another, even though there is no fiduciary relation, and takes the legal title in his own name, there is a resulting trust, and the legal title is a mere naked form, and only evidence of title in favor of the *cestui que* trust, because his money paid for it. And if a person having the money or means of another in his hands to invest

for the owner uses the same in the purchase of property in his own name, the law will hold him to be the trustee of the owner of the money or other consideration used in effecting the purchase."

This is not a case of a purchaser paying money which is in his hands belonging to another, as the purchase price of 19/28 of the land and taking title in himself, and thus becoming a trustee thereof for the one whose money he so paid, under the rule above noticed; but it is a case of the would-be beneficiary voluntarily paying his own money and seeking to become such beneficiary by such payment. No decision has come to our notice recognizing the creation of a resulting trust in favor of one so paying all or a part of the purchase price of land. However, the authorities seem to be that the rule invoked is applicable only to a purchase, and the passing of the legal title to land as a result of such purchase; and not to the advancement or payment of money to effect a mere redemption or discharge of a lien upon the land.

Now what was the result of the payment by respondent from his own funds of 19/28 of the amount necessary to redeem this land from the sale made under the mortgage foreclosure judgment? It has become the well settled law of this state that a mortgage, unlike a mortgage at common law, does not vest title in the mortgagee, but only creates a lien upon the land in favor of the mortgagee as against the interest of the mortgagor; and that a foreclosure sale of the land looking to the satisfaction of the mortgage debt creates no greater interest in the land in the purchaser at such sale, during the period allowed by statute within which the mortgagor may redeem. In other words, the mortgagor is not, by such sale, divested of his title to the land prior to the expiration of the redemption period, and can even then be divested of his title only upon

his failure to redeem during that period. Rem. Code, § 597; *Hays v. Merchants' Nat. Bank,* 14 Wash. 192, 44 Pac. 137; *Singly v. Warren,* 18 Wash. 434, 51 Pac. 1066, 63 Am. St. 896; *DeRoberts v. Stiles,* 24 Wash. 611, 64 Pac. 795; *Carroll v. Hill Tract Imp. Co.,* 44 Wash. 569, 87 Pac. 835.

It seems plain, therefore, that the legal title to this land and the whole thereof at all times in question remained in appellant, and that respondent did not in any sense purchase any part of the land or the legal title thereto by furnishing and paying a portion of the redemption money as above noticed. Respondent merely aided in causing, by the use of his own money, the satisfaction and discharge of the mortgage and foreclosure judgment lien during the period of redemption, and at a time when the legal title to the land remained in appellant, without any necessity of any conveyance thereof from anyone. With one exception, to be presently noticed, there has not come to our attention any decision or any expression of any text writer indicating that a resulting trust will arise vesting equitable title to real property in land from the fact of the one claiming such title having voluntarily paid from his own funds money towards the satisfaction of a lien upon the land. The authorities seem to us to imply that the doctrine of resulting trusts and the rule of their creation, as above noticed, has no application except to the transfer of the legal title to land. It may be that there are no decisions expressly so holding, but we think such an inference can be read between the lines in the following decisions: *Tobin v. Tobin,* 139 Wis. 494, 121 N. W. 144; *Hanrion v. Hanrion,* 73 Kan. 25, 84 Pac. 381, 117 Am. St. 453; *Titchenell v. Titchenell,* 74 W. Va. 237, 81 S. E. 978; *Munch v. Shabel,* 37 Mich. 166.

The only decision coming to our notice which seems

to hold to the contrary of this view is that of *Tillman v. Murrell,* 120 Ala. 239, 24 South. 712. Looking to the language of that decision apart from the statement of the facts of the case, it does seem that it was there held that one paying his own money for redemption of land of another from a mortgage sale is entitled to be decreed the equitable owner of the land. The decision is very brief and cites no authority. The result may be accounted for upon the theory that the sale of the land in satisfaction of the mortgage vested legal title in the purchaser even during the redemption period, which seems to be the law of some states, and possibly is of Alabama, though as to this we are not advised. However, looking to the facts in that case as stated preceding the court's opinion, it appears that the redemption money was paid in pursuance of an oral agreement by the terms of which the one who paid the money was to receive conveyance of the land, which conveyance he did receive before the controversy in that case arose, it being one in which the creditors of the original owner claimed that the land was subject to their rights. That decision, we think, should not be regarded by us as of controlling force in favor of respondent.

Counsel for respondent cite and quote from the text of 39 Cyc. 125, as follows:

"As a general rule the nature of the sale or conveyance by which the title to property, paid for with one person's money, is acquired by another, is immaterial, provided it is sufficient to pass the legal title to the person against whom the trust is sought to be declared; and if the circumstances are sufficient for that purpose a resulting trust will arise, although the property is purchased at a judicial sale."

Counsel's thought seems to be that this view of the law argues that what respondent did towards the re-

demption of the land was within the spirit of the rule of the creation of resulting trusts. It seems to us that this quotation from Cyc. argues to the contrary, in that it, like all the authorities, except *Tillman v. Murrell, supra,* inferentially refers to the rule as applicable only to the passing of the legal title to land.

While in the cross-complaint of respondent there is added to the prayer that he be adjudged the owner of an undivided 19/28 of the land, a prayer for "such other and further relief as to the court may seem meet and just in the premises," there is no argument advanced in the briefs of counsel for respondent that he is entitled to any other relief than that he be adjudged to have title to the land to the extent of an undivided 19/28 thereof, according to the specific prayer of his cross-complaint. We are therefore not deciding any question other than that of the title to the land. The wife of appellant also is a party plaintiff and appellant with him, and of course will share with him the fruits of this litigation. We have omitted her name from our discussion merely for convenience of expression.

We conclude that the judgment of the superior court must be reversed, and the cause remanded to that court with directions to enter judgment quieting title to the whole of the land in appellant as against the claim of title thereto made by respondent. It is so ordered.

MACKINTOSH and BRIDGES, JJ., concur.

## ON REHEARING.

[*En Banc.*   June 1, 1921.]

PER CURIAM.—This cause was reargued before the court *En Banc* on May 24, 1921, in pursuance of the granting of respondent's petition for rehearing. Deeming ourselves fully advised in the premises, we are of the opinion that the cause was correctly disposed of by

the decision of Department One.   For the reasons therein stated, the judgment is reversed as in the Department opinion directed.