JOHN DAVIS & CO., *Respondent,* v. CEDAR GLEN # FOUR, INC., *et al., Defendants,* JAMES R. SCOTT *et al., Appellants.**

*Reported in 450 P.2d 166.

Vaughn E. Evans, for appellants.

Preston, Thorgrimson, Horowitz, Starin & Ellis, by John A. Gose, for respondent.

STAFFORD, J.†—John Davis & Company (hereinafter called the respondent) instituted consolidated actions to foreclose four separate mortgages. The appellants, James R. Scott and wife, held a series of mortgages on the same property. The trial court held that respondent's mortgages were superior to the Scotts' mortgages. The Scotts have appealed.

The trial court's ultimate findings of fact are supported by substantial evidence in the record which indicates that the following events occurred:

Stewart W. Petersen and wife were speculative builders in need of land. Jack Greenwalt, a real estate salesman for L. P. Martin, Inc., knew that the appellants were purchasing land under contract and that it might be available.

On June 21, 1962, Mr. Greenwalt secured from appellants an option to sell. Thereafter, he presented them with an earnest money receipt which they executed on June 23, 1962. By so doing, appellants agreed to sell their land to the Petersens on a contract with a stipulated down payment, the balance to be paid in monthly installments with a larger payment on the sale of each home to be constructed on the property. Appellants agreed to join the Petersens in platting the property at the Petersens' expense and also agreed to ". . . deed release lots upon request and receive back notes and mtgs [mortgages] *second only to the builders* [sic] *loan.*" (Italics ours.) The transaction was to be subject to FHA approval and satisfactory financing by the respondent. Appellants knew that the builder's loan was to be made by the respondent and that their mortgages would be junior to those securing the respondent's loan.

---

†Judge Stafford is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

Pursuant to the agreement, the appellants joined the Petersens and respondent in the dedication of a plat known as Cedar Glen No. 4 (hereinafter called the plat). This was done on November 27, 1962, but the plat was not recorded until December 24, 1962.

Mr. Greenwalt selected the United Bonded Mortgage & Escrow Company to close the real estate transaction between the appellants and the Petersens. In the next several days a series of events transpired in which appellants initialed, for approval, carbon copies of 16 notes and mortgages that were to run from the Petersens to appellants; executed a warranty deed naming the Petersens as grantees of all lots in the plat; and signed escrow instructions pertaining to the same lots.

The appellants' escrow instructions provided that they were to supersede prior instructions contained in the earnest money receipt and agreement; that the description contained in said agreement was to be changed to the plat description in the warranty deed; that appellants' warranty deed was to be delivered to the Petersens on the receipt of $7,575 together with notes and mortgages in the amount of $8,425; that the escrow company was to proceed to close the deal by obtaining the executed notes and mortgages ". . . which we have approved" and provided further that ". . . *we further agree not to record said mortgages until grantee* [sic] *herein has arranged for a construction loan* to build on the property herein described; . . . ." (Italics ours.)

██ During the same period of time, the Petersens executed notes and mortgages which contained the following language:

It is understood and agreed that this mortgage is 2nd and junior to a first mortgage to be placed on said property as a construction loan. It is agreed that any default of said first mortgage shall be construed as a default of this mortgage.

Appellants have denied that such language was contained in the forms which they originally approved. However, the trial court found, on disputed evidence, to the contrary.

Even if we were to believe that the trial court should have resolved the factual dispute the other way, we will not substitute our judgment for that of the trial court on questions of disputed fact. *Sander v. Wells,* 71 Wn.2d 25, 426 P.2d 481 (1967); *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959).

The Petersens also signed escrow instructions which provided that the escrow company was to deliver to appellants $7,575, together with the notes and mortgages upon receipt of appellants' warranty deed. The instructions provided further that they were to supersede the earlier instructions contained in the earnest money receipt and agreement of June 23, 1962. Finally, the terms provided that the mortgages were not to be recorded until the Petersens had arranged for a construction loan.

The plat was recorded December 24, 1962 and on December 28, 1962, the warranty deed from appellants to the Petersens was also recorded. On December 31, 1962, the escrow company gave appellants their closing statement and a check for $1,023.38 (*e.g.* the agreed $7,575 less closing costs and the costs of paying off the contract).

The Petersen-Scott mortgages were recorded January 10, 1963. Thereafter, the escrow company mailed the notes and mortgages to appellants on January 31, 1963.

In the meantime, the Petersens became engaged in financing the plat project. As previously indicated, the Petersens, appellants, and respondent had joined in the dedication of the plat on November 27, 1962. On December 3, 1962, articles of incorporation were executed for a corporation to be known as Cedar Glen # Four, Inc. (hereinafter called the corporation). This corporation, in which Petersen held all but two qualifying shares, was to be the agency through which the plat was to be developed. The articles of incorporation were not filed until January 7, 1963.

Although the corporation was not qualified to act, the first meeting of the board of directors was held on December 20, 1962. At that meeting Petersen was elected president and was given sweeping powers to transact virtually

all corporate business including the transfer of property and the incurring of indebtedness, as indicated in a document entitled "Minutes Of The First Meeting Of Board of Directors . . . ."

When the corporation sought the loan from respondent, Petersen exhibited the "Minutes" as evidence of his authority to act. At that time respondent was unaware that the incorporators had not filed their articles of incorporation. However, respondent's subsequent title report indicated that several possible "exceptions" existed as of December 31, 1962:

3. Right, title and interest of John Davis & Co., . . . , suggested by reason of their joinder in the dedication of the plat.

. . . .

5. Unpaid corporate license fees of Cedar Glen # Four, Inc., for the period ending July 1, 1963, if any. (Inquiry is being made).

A supplemental title report revealed that the first "exception" was cleared by respondent having quitclaimed to the Petersens all lots of the plat. The quitclaim deed (which contained an "after acquired title" clause) was recorded January 3, 1963.

Later that day the Petersens quitclaimed their interest in the plat to the corporation. The deed was immediately recorded.

Still later the same day, the corporation, as mortgagor, gave the respondent four separate mortgages which are the subject of this action. Each covered four separate lots in the plat and each secured separate notes for the total amount of $213,900. These mortgages were recorded on January 3, 1963. All of the foregoing transactions filed and recorded on January 3rd were recorded in the order mentioned above.

Respondent caused disbursements to be made on the construction loan beginning January 4, 1963 pursuant to the disbursement certificates from the corporation. As the certificates were received, the respondent, a wholly owned subsidiary of Sherwood and Roberts, had Sherwood and Roberts make the payments. Sherwood and Roberts in turn

debited respondent's account for such payments made on the corporation's behalf.

The incorporators finally filed the corporation's articles of incorporation and paid the license fees January 7, 1963. On January 10, 1963, the mortgages, which ran from Petersens to appellants, were filed and recorded.

The corporation's notes to the respondent were in default by October 1, 1963. As a result, respondent, as owner and holder of the notes and mortgages, exercised its option to declare the whole of the balance and interest due. A decree of foreclosure was entered and a sheriff's sale later confirmed. This action was challenged by appellants who held mortgages on the same property to secure a remaining balance of $4,739.04. The trial court held that respondent's mortgages were superior.

Appellants have made 13 assignments of error which will be reviewed herein according to subject matter rather than individually.

I

It is contended that finding of fact No. 38 is an improper attempt to revise the Petersen-Scott contract. It is alleged that the revision is based on the trial judge's personal observation of appellants rather than based upon fact. The challenged finding of fact reads as follows:

That from personal observation of each of the defendants, James R. Scott and Betty L. Scott, his wife, and viewing their demeanor on the stand, and reviewing the documentary evidence that they executed and received, the court finds that the defendants, James R. Scott and Betty L. Scott, his wife, *from the inception of the sale to the defendants Petersen [sic] of Lots 1 through 16 of Cedar Glen No. 4 intended to take notes and second mortgages to secure their interest in the property.* That the said second mortgages were to be second only to the security securing the builder's loan. (Italics ours.)

This assignment of error is not well taken. The finding of fact does not refer to a *revision* of the contract. That is merely appellants' assumption based upon their interpretation of disputed evidence. Actually, the finding of fact

declares that the appellants intended to take second mortgages from the inception of the sale. Granted, the appellants have strenuously denied any such intent, but the dispute was resolved against them at the trial level. As stated elsewhere in this opinion, this court will not substitute its judgment for that of the trial court on questions of disputed fact. *Sander v. Wells, supra; Thorndike v. Hesperian Orchards, Inc., supra.*

■ The trial court's reference to "personal observation" and "demeanor on the stand" merely outlines two of a series of impressions the judge weighed in concluding that the appellants intended to take second mortgages. Although it is unnecessary for a trial judge to detail the mental process through which he goes in an effort to resolve questions of disputed facts, it was not error to have done so in this case.

## II

The articles of incorporation were not filed until January 7, 1963. Thus, the corporation did not become a legal entity until then. *See Mootz v. Spokane Racing & Fair Ass'n,* 189 Wash. 225, 64 P.2d 516 (1937); RCW 23.01.050.

Appellants contend that a deed is void if the named grantee is not a legal entity at the time of conveyance. They cite in support of their argument *Loose v. Locke,* 25 Wn.2d 599, 171 P.2d 849 (1946). In essence, appellants argue that the Petersens' quitclaim deed to the corporation was void because it was filed for record on January 3, 1963, four days before the corporation became a legal entity. Further, appellants submit that if the corporation was not a legal entity it could not acquire title and thus could not execute a valid mortgage.

This assignment of error is without merit. Although it is true as a general rule that a deed is void if the named grantee is not a legal entity, the facts of this case fall within an exception to the rule.

■ A deed to a corporation, made prior to its organization, is valid between the parties. Title passes when the

corporation is legally incorporated. This is particularly true as against one who does not hold superior title when the corporation goes into possession under the deed. 6 Thompson on Real Property, § 3011 (1962); 2 Patton on Titles, § 337 (2d ed. 1957).

The corporation became a legal entity on January 7, 1963 just 3 days prior to the filing of the mortgages from the Petersens to the appellants. Since the corporation became a legal entity on January 7, 1963, it is deemed to have acquired valid legal title under the Petersens' quitclaim deed on that date.

■ Title subsequently acquired by a mortgagor inures to the benefit of a mortgagee whose debt is still existing and enforceable. *Everly v. Wold,* 125 Wash. 467, 217 Pac. 7 (1923). This disposes of any question concerning the validity of the corporation's title to the property and subsequent mortgage thereon.

### III

Next, appellants assert that they should prevail despite any valid title conveyed from the Petersens to the corporation and regardless of any valid mortgages that may have passed from the corporation to respondent. They submit that respondent divested itself of all rights under the mortgages. This argument stems from the fact that on January 3, 1963 respondent quitclaimed to the Petersens its interest in the plat in an effort to clear an apparent cloud thereon. This quitclaim deed contained an "after acquired title" clause.

Appellants maintain that the "after acquired title" clause in the quitclaim deed, filed and recorded on January 3, 1963, passed respondent's interest in the mortgages which were subsequently filed and recorded on the same day. Therefore, they conclude that the respondent has no further interest in the mortgages on which they can foreclose.

■ It must be conceded that the theory, propounded by appellants, is novel. However, the quitclaim deed's "after acquired title" clause did not divest respondent of its interest in the subsequently filed mortgages. A mortgage does

not vest legal title in a mortgagee. It only creates a lien upon the land in favor of the mortgagee as against the interest of the mortgagor. *Clise v. Burns,* 175 Wash. 133, 26 P.2d 627 (1933); *Cochran v. Cochran,* 114 Wash. 499, 195 Pac. 224 (1921), *rehearing denied,* 114 Wash. 506, 198 Pac. 270 (1921); 36 Am. Jur. *Mortgages* § 174 (1941). The right of possession remains in the mortgagor. *Cochran v. Cochran, supra;* 36 Am. Jur. *Mortgages* § 174, *supra.*

Since the mortgages in question only created a lien in favor of the respondent, the "after acquired title" clause in its deed to the Petersens did not transfer the subsequently executed mortgage. The mortgage was not "after acquired title", it was only a subsequent lien.

## IV

Appellants contend that respondent gave no consideration for the notes secured by the mortgages. They maintain that respondent loaned no money to the corporation because all monies disbursed on behalf of the corporation were paid by checks issued in the name of Sherwood and Roberts. They conclude that respondent is not the real party in interest. Their position is not well taken for two reasons:

First: Respondent is a wholly owned subsidiary of Sherwood and Roberts. Respondent caused all disbursements to be made by Sherwood and Roberts which in turn debited respondent's account. Respondent became indebted to Sherwood and Roberts for all disbursements made, at its request, on behalf of the corporation. This is adequate consideration for the notes.

It is not essential that the consideration move directly from the promisee. It is sufficient if it moves from a third person. Generally, if consideration is sufficient in other respects, it does not matter from whom the consideration moves. It may move from a third person as well as from the promisee. 17 Am. Jur. 2d *Contracts* § 94 (1964).

Second: The respondent is the holder and owner of the notes and mortgages of the corporation. The holder of a

negotiable instrument may sue thereon in his own name, and payment to him in due course discharges the instrument. *See* RCW 62.01.051. It is not necessary for the holder to first establish that he has some beneficial interest in the proceeds. 12 Am. Jur. 2d *Bills and Notes* §§ 1069, 1071, 1072, 1075.

## V

The remaining assignments of error relate to three findings of fact which, in substance, declare that respondent did not mislead the appellants in any way; that respondent did not enter into agreements or understanding to commit criminal or unlawful acts or lawful acts for criminal or unlawful purposes; and that respondent did not know that appellants claimed any interest, other than a second mortgage, until their answer was filed.

These findings of fact pertain to appellants' fourth affirmative defense which alleges a conspiracy among the respondent, United Bonded Mortgage & Escrow Company, L. P. Martin, Inc. and their various employees, and the Petersens to induce appellants to sign the various documents in evidence. It is alleged that such transactions were accomplished by means of collusion among the above-mentioned parties.

A conspiracy is a combination of two or more persons who contrive to commit a criminal or unlawful act, or to commit a lawful act for criminal or unlawful purposes. *Sears v. Teamsters Local No. 524*, 8 Wn.2d 447, 112 P.2d 850 (1941). For there to be a conspiracy, appellants must establish that respondent entered into an agreement of some kind with the other alleged conspirators to accomplish the object of the conspiracy. *Corbit v. J. I. Case Co.*, 70 Wn.2d 522, 424 P.2d 290 (1967).

Appellants had the burden of proving the alleged conspiracy to defraud by clear, cogent and convincing evidence. *Corbit v. J. I. Case Co., supra; Cheesman v. Sathre*, 45 Wn.2d 193, 273 P.2d 500 (1954). While a finding that a conspiracy existed may be based on circumstantial evi-

dence, mere suspicion is not sufficient. *Corbit v. J. I. Case Co., supra; Harrington v. Richeson,* 40 Wn.2d 557, 245 P.2d 191 (1952). The test of the sufficiency of the evidence to prove a conspiracy is that the circumstances must be inconsistent with a lawful or honest purpose and reasonably consistent only with the existence of the conspiracy. *Corbit v. J. I. Case Co., supra.*

Appellants have outlined the facts from which they infer a conspiracy. However, the inferences urged by them certainly are not the *only* possible ones. It is equally possible to attribute a lawful motive to the facts and circumstances in question.

Insofar as the trial court's ultimate findings of fact are concerned, it is usually possible for the appellants to diminish or enhance the weight to be attached to various evidentiary facts and thereby obtain a result different from that reached by the trial judge. However, in this case, the findings of fact are amply sustained by the evidence. We will not substitute our judgment for that of the trial court. *Sander v. Wells, supra.*

With the foregoing matters in mind, and considering the appellants' burden of proof, the trial court, in effect, found that appellants had not sustained the burden and that no conspiracy or fraud had been established.

Appellants' brief implies that there may have been some questionable business practices in the early stages of the association among Mr. Greenwalt, the escrow company, and the Petersens and suggests further that respondent was involved. However, it is interesting to note that the legitimacy and lawfulness of respondent's transactions with these parties are not questioned. No error is assigned to the trial court's finding of fact No. 43, which reads as follows:

> That any agreement or contract that the plaintiff had with United Bonded Mortgage & Escrow, Inc. and/or its managing agent, Eileen Hansen, and/or L. P. Martin, Inc. and/or its agent, Jack Greenwalt, and/or the defendant, Stewart W. Petersen, and/or the defendant, Toshie M. Petersen, either individually or collectively, was for a lawful and legitimate business purpose.

This disposes of the question of the lawfulness and legitimacy of the respondent's transactions with these parties. Further, we note that this court will not consider alleged errors of the superior court unless such errors are pointed out in the appellants' assignments of error. Supreme Court Rule on Appeal 43 is explicit in its terminology and is strictly followed.

The judgment of the trial court is affirmed.

WEAVER, ROSELLINI, HALE, and McGOVERN, JJ., concur.

---

April 24, 1969. Petition for rehearing denied.